AMERICAN MOTORISTS INSURANCE COMPANY, Plaintiff,

v.

PHILIP CAREY CORPORATION, Glen Alden Corporation, General Accident Fire & Life Assurance Corporation, Ltd., and Employers Insurance of Wausau, Defendants.

No. 79 Civ. 0518.

United States District Court,
S. D. New York.

Jan. 3, 1980.

Gillen, Turk & Caliendo, New York City, for plaintiff; Charles P. Caliendo, New York City, of counsel.

Shearman & Sterling, New York City, for the Celotex Corporation, successor in interest to defendant Philip Carey Corp.; Michael J. De Santis, Leonard Gross, New York City, of counsel.

Steptoe & Johnson, Washington, D. C., Calvin H. Cobb, Jr., Washington, D. C., Poletti, Freidin, Prashker, Feldman & Gartner, Justin Feldman, New York City, for defendant General Accident Fire & Life Assurance Corp., Ltd.

O'Brien, Kelly & Rode, Mineola, N. Y., for defendant Employers Insurance of Wausau; Frank R. Daly, Jr., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This action for declaratory judgment was commenced by American Motorists Insurance Company ("American Motorists") against its assured Philip Carey Corporation ("Carey"), General Accident Fire & Life Assurance Corporation, Ltd. ("General Accident") and Employers Insurance of Wausau ("Wausau"), two other insurers of Carey. Carey and its successor in interest, The Celotex Corporation (hereafter referred to interchangeably as "Celotex" or "Carey") move to stay all proceedings herein pending determination of an action commenced by Celotex in the Circuit Court, Hillsborough County, Florida against American Motorists, General Accident, Wausau, and 11 other primary and excess liability insurers who, under their respective policies, undertook to indemnify Carey against various risks, including damages for personal injuries imposed upon Carey, and to defend it in actions asserting such claims.[1]

In the Florida action Celotex seeks a determination of its rights to defense and indemnity under policies issued by the fourteen insurers relative to over 1,000 lawsuits in federal and state courts and to potential actions against Celotex based upon claims for damages due to asbestosis allegedly resulting from exposure to asbestos fibers in materials manufactured and sold by Carey during one or more of the policy years of one or more of the policies listed in the complaint. The judgment sought in the Florida action specifically would require the insurance companies to defend and indemnify Celotex for all. liability imposed as a result of pending or subsequently filed lawsuits based upon claims for injuries due to exposure to asbestos which occurred during the respective policy periods of the defendant insurers.

General Accident and Wausau, the only two insurers named as defendants in this action, oppose the motion to stay, whereas American Motorists, the plaintiff after first opposing, has consented to the stay. Upon the argument of the instant motion it appeared that in the Florida action one of the defendants, Home Insurance Company, had removed the action against it to the United States District Court, Middle District of Florida, Tampa Division, pursuant to 28 U.S.C., section 1441 and that a motion by Celotex to remand to the Florida state court was then sub judice. Since the resolution of that motion appeared to be of some significance in the disposition of this motion for a stay, this Court withheld decision pending determination of the motion to remand. The Court has now been advised that the remand was granted; thus all 14 insurance carriers of Carey, primary and secondary, are defendants in the Florida state action.

The basic controversy among Celotex and the primary and excess insurers centers about their relative rights and obligations under the policies of insurance, particularly with respect to claims for injuries advanced

---

1. The Florida action was filed 3½ months after the commencement of this action.

by various persons employed by companies who had purchased asbestos products from Carey. Carey, as the manufacturer or distributor of such products, has been sued in hundreds of actions instituted by such persons asserting claims within the periods when insurance companies had issued policies to Carey between 1964 and 1977.

The origin of this action is as follows: Carey was sued in two separate actions in the New Jersey Superior Court by Swift and Dyson who alleged they had sustained personal injuries resulting from long-term exposure to asbestos or asbestos products during the course of their employment by a company which had acquired such products from Carey. They further alleged that their symptoms first manifested themselves some time between 1969 and 1970. American Motorists defended the actions and called upon General Accident (which had issued policies to Carey for the period from January 1964 to January 1968), and Wausau (whose policies covered the period from January 1968 to January 1969) to participate in the defense of the *Swift* and *Dyson* actions; both companies declined to do so. American Motorists settled the actions and upon the refusal of General Accident and Wausau to indemnify or contribute to the settlements, commenced this action.

American Motorists' claim essentially is based upon its interpretation of a clause appearing in the relevant policies insuring Carey against an "occurrence . . . which results, during the policy period, in bodily injury. . . ." Its position, also that of the assured, is that an "injury" resulting from asbestos occurs upon inhalation of asbestos fibers, *i. e.*, during periods when the General Accident and Wausau policies were in effect. The latter two, however, contend that "injury" does not occur until it manifests itself or is diagnosed. This interpretation, if correct, would mean that the injury "occurred" after the termination dates of their respective policies. Thus the controversy is whether liability attaches upon "exposure" or "manifestation." In this action, American Motorists seeks a declaratory judgment to determine the respective rights of Carey, the

assured, and the insurer litigants; and from General Accident and Wausau it seeks indemnification or contribution based upon the settlement of the *Swift* and *Dyson* actions, and legal and other expenses incurred in connection therewith. Jurisdiction is based upon diversity of citizenship.

General Accident in its answer, among other defenses, alleges lack of subject matter jurisdiction; it denies that complete diversity jurisdiction exists; it seeks dismissal of the action based upon the failure of plaintiff to join one or more parties indispensable under Fed.R.Civ.P. 19. General Accident also has filed a cross-claim against Carey for a declaratory judgment that it is *not liable* to Carey or to any person claiming under or derivatively through Carey as to any of the matters arising out of the claims alleged in the instant suit. Wausau, among other defenses, alleges lack of subject matter jurisdiction.

It cannot be seriously challenged that as to all 14 insurance companies in the Florida action that court has subject matter and in personam jurisdiction and that all parties who have rights or obligations under the policies issued by the defendants are before that court; that each litigant is in a position to advance whatever its respective position is either by way of defense, claim or cross-claim; and that a judgment would have res judicata effect. So, too, it cannot be questioned that in this action, with only three insurance carriers and Carey as litigants, any judgment would be binding only on them and that a determination conceivably may differ from that entered in the Florida action.

Upon the surface a rather compelling case for a stay appears, but General Accident and Wausau in a strongly worded statement admonish this Court that it has a duty to deny the stay and to permit the action here to proceed. They assert that they have a congressionally granted right to a determination of the specific claims in this action, to wit, those arising out of the *Swift* and *Dyson* lawsuits with respect to which American Motorists seeks (1) a decla-

ration of the rights of the litigants, and (2) judgment against them for the specific sums American Motorists paid in the defense and settlement of the lawsuits; that to grant the stay would be tantamount to a dismissal of this action contrary to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them" citing *Colorado River Water Conservation District v. United States.*[2] Their position reflects a misreading or overreading of that case and other cases so strongly pressed in support of the denial of this motion. The instant motion is not one for dismissal of the action for lack of jurisdiction. It is a motion for a stay; it does not involve, as they repeatedly state, "an abdication by this Court of its jurisdiction"; the stay, if granted, would not mean declining jurisdiction, but only delaying its exercise.[3]

*Colorado River* involved an issue of district court jurisdiction with respect to the adjudication of water rights asserted by the Government on its behalf and on behalf of certain Indian tribes. The issue there was whether under the McCarran Amendment[4] both the district court and the state court had concurrent jurisdiction over controversies involving Indian water rights and if so, whether the doctrine of abstention was applicable. The district court did not decide the jurisdictional question but dismissed the action under the doctrine of abstention in favor of a pending state proceeding. The court of appeals reversed, holding that abstention was inappropriate. The Supreme Court reversed the court of appeals and held (1) that both the state and federal district courts had jurisdiction over the Indian water rights claims, and (2) that, although the dismissal was not warranted under any of the three traditional grounds for abstention, nonetheless,

[T]here are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts. These principles rest on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."[5]

The Court acknowledged the discretionary power of the lower courts to defer to state court proceedings and held that several factors present in that litigation counseled against the exercise of concurrent federal jurisdiction and upheld dismissal of the federal suit in favor of the pending state court action. The Court enunciated guideline factors for the exercise of discretion in instances of concurrent federal-state court actions which include the avoidance of piecemeal litigation in favor of comprehensive disposition of litigation; avoidance of additional litigation through inconsistent dispositions; the order in which jurisdiction was obtained by the concurrent forums; and inconvenience of the federal forum.

Subsequent to *Colorado River* the discretionary power of the district court was emphasized when a plurality of the Supreme Court in *Will v. Calvert Fire Ins. Co.*[6] reiterated the long-standing doctrine set forth in *Brillhart v. Excess Ins. Co.*[7] that although the district court has jurisdiction under the Federal Declaratory Judgment Act, it "is 'under no compulsion to exercise that jurisdiction,' where the controversy may be settled more expeditiously in the state court."[8] The Court continued "[I]t is true that *Colorado River* emphasized 'the

**2.** 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

**3.** *See Clarkson Co., Ltd. v. Shaheen,* 544 F.2d 624, 629 n.7 (2d Cir. 1976).

**4.** 43 U.S.C. § 666.

**5.** 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment*

*Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)).

**6.** 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978).

**7.** 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).

**8.** 437 U.S. at 662–63, 98 S.Ct. at 2555.

virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.' That language underscores our conviction that a district court should exercise its discretion with this factor in mind, but in no way undermines the conclusion of *Brillhart* that the decision whether to defer to the concurrent jurisdiction of a state court is, in the last analysis, a matter committed to the district court's discretion." [9]

This Court is persuaded that substantial factors counsel a stay of this action in deference to the state action where a binding judgment may be obtained determining the rights of all interested parties and would, in the end result, eliminate additional and proliferating litigation.

The defendants' opposition to the stay on the ground that the Florida action seeks an advisory opinion based upon "hypothetical" and "amorphous" claims is without substance. It is clear that there is a substantial controversy among all interested parties as to the point at which coverage applies; moreover, American Motorists' very claim in this action is one of those listed in the Florida case; it is not "amorphous," nor are those claims advanced in hundreds of lawsuits against Celotex "hypothetical." All of them have already cast Celotex in damages or may result in imposing damages upon it, with the issue of "exposure" or "manifestation" under the policies still unresolved. A determination by the Florida court would resolve the issue as to all interested parties and avoid a piecemeal and perhaps conflicting determination.

Additional factors favor granting the stay. New York State has little or no contact with the parties or their litigation. Carey is an Ohio corporation. Plaintiff, American Motorists, is an Illinois corporation with its principal place of business there. General Accident consists of corporations organized under the laws of the states of New Jersey and Pennsylvania and the United Kingdom and with their principal places of business in the Commonwealth of Pennsylvania and the United Kingdom.

Wausau consists of member corporations organized under the laws of the State of Wisconsin, having their principal place of business in that State. All the insurers, including American Motorists, plaintiff herein, and General Accident and Wausau, are either licensed to do business or are doing business in Florida. Neither General Accident nor Wausau is a New York corporation.

The *Swift* and *Dyson* suits were brought in the State of New Jersey and settled in that State. All the plants at which Carey or Celotex manufactures or manufactured the asbestos products which give rise to the claims against it are in Ohio, Pennsylvania, and New Jersey. While defendants argue that there is no connection between the policies at issue and the State of Florida, Celotex is the successor in interest of Carey and has its principal place of business in the State of Florida. All the books and records and other documents of Carey that are relevant to the various claims of the parties are located in the State of Florida.

The opposing defendants also argue that the courts of Florida interpret the disputed clause of the contract as have all other courts that have considered the issues and, accordingly, under *Erie v. Tompkins*,[10] regardless of whether this Court or the courts of Florida decide the issue the result is the same. If so, however, this would appear to be an added reason to have the Florida court make the determination. Moreover, General Accident's opposition to the stay appears somewhat inconsistent with its plea for dismissal of this action based upon its defense of lack of complete diversity jurisdiction and failure to join indispensable parties.

Other than this motion and the opposing defendants' motion for summary judgment, there has been little activity in this suit. Except for a massive set of interrogatories served by General Accident upon Carey (still unanswered), there has been virtually no action. Florida Rules of Civil Procedure

---

**9.** *Id.* at 664, 98 S.Ct. at 2558 (citation omitted).

**10.** 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

are patterned after the federal rules and appear to afford the parties the same liberal pre-trial discovery.[11] To foreclose any issue on this subject an appropriate stipulation may be required under any order granting a stay.[12] Finally, the defendants have the same right to move for summary judgment in the Florida action as in the instant suit[13]; incidentally, a motion made after the instant motion for a stay had been made.

The Court has fully considered the various arguments advanced in opposition to the stay but neither singly nor collectively do they justify what must be the end result if the stay is denied and this action with only three insurance companies proceeds apace with the Florida case with all of the interested insurance companies—a gross and unjustifiable waste of judicial resources, duplicative efforts of counsel, and unnecessary additional expense to their clients. Such a result is neither in the interests of the litigants nor in the public interest.

What was said by this Court in a somewhat analogous situation is appropriate here, "While parties have a right to this forum, granted under the diversity statute, they have no right to engage the Court or their adversaries in wasteful activities when another forum is available where claimed grievances may be fully and fairly heard and a disposition made upon the merits."[14]

The motion for a stay is granted without prejudice to a motion to vacate the stay in the event of undue delay or any other factor which may warrant such an application. The stay also is granted upon condition that if any defendant opposing the stay is of the view that Florida state discovery procedure is inadequate that the movant stipulate that all pre-trial discovery shall be in accordance with the Federal Rules of Civil Procedure. So ordered.

---

11. 30 Fla.Stat.Ann., Rules of Civil Procedure 1.280–1.390 (1967).

12. *Weiss v. Doyle*, 178 F.Supp. 566, 571 (S.D.N. Y.1959).

13. 31 Fla.Stat.Ann., Rule of Civil Procedure 1.510 (1967).

14. *Weiss v. Doyle*, 178 F.Supp. 566, 570 (S.D.N. Y.1959).