In re FRIGITEMP CORP., Bankrupt.

LITTON SYSTEMS, INC., d/b/a Ingalls Shipbuilding Division, Plaintiff,

v.

FRIGITEMP CORP., Defendant.

Lawson F. BERNSTEIN, Trustee in Bankruptcy of Frigitemp Corp., Plaintiff,

v.

LITTON SYSTEMS, INC., d/b/a Ingalls Shipbuilding Division, Defendant.

Nos. 80 Civ. 3097 (PNL)–80 Civ. 3099 (PNL).

United States District Court, S. D. New York.

Jan. 6, 1981.

---

Marc S. Kirschner, Gelberg & Kronovet, New York City, for Lawson F. Bernstein, trustee in bankruptcy of Frigitemp Corp.

Malcolm I. Lewin, Lans, Feinberg & Cohen, New York City, Robert L. Ackerly, Thomas L. Patten, Sellers, Conner & Cuneo, Washington, D. C., William J. Powers, Jr., Pascagoula, Miss., for Litton Systems Inc.

## OPINION AND ORDER

LEVAL, District Judge.

This is a consolidation of appeals from related orders of Bankruptcy Judge Lewittes. The appellant is Lawson Berstein, the trustee in bankruptcy ("Trustee") for Frigitemp Corporation ("Frigitemp" or "bankrupt"). The appellee is Litton Systems, Inc., which does business in part as Ingalls Shipbuilding Division.

The Trustee appeals the following orders:

(1) Denial, without prejudice, of Trustee's motion for approval as against Litton of arbitration proceedings;

(2) Summary judgment vacating the stay of Litton's 1977 action against Frigitemp in federal court for the Southern District of Mississippi;

(3) Summary judgment granting Litton leave to proceed in Civ. Action No. S80-0371(R), filed on March 27, 1980 in federal court for the Southern District of Mississippi, and dismissing the trustee's suit to enjoin prosecution of that action; and

(4) Denial, in part, of the Trustee's motion to compel responses to interrogatories and to compel production of documents.

### Facts

In 1969 and 1970 the United States Navy awarded several shipbuilding contracts to Litton's Ingalls Ship Building Division. Litton subcontracted work involving more than 100 million dollars to Frigitemp.

In early 1977 Frigitemp and Litton entered into an arrangement whereby Litton agreed to advance to Frigitemp the allowable costs under several of the subcontracts, subject to an accounting and possible recoupment for overpayment.

Litton and Frigitemp also entered into an arbitration agreement ("the first arbitration agreement") under which, *inter alia*, Frigitemp's claims against Litton arising prior to November 15, 1976 were to be settled by arbitration in New Orleans.

In October of 1977 Litton brought action against Frigitemp in federal court in Mississippi seeking an accounting for moneys advanced, recoupment of alleged overpayments, specific performance of certain obligations and injunctive relief. Frigitemp counterclaimed for breach of contract damages and pleaded the arbitration agreement as a defense and counterclaim.

The parties agreed to a consent order, providing that Frigitemp would continue working on the subcontracts. No further steps were taken thereafter in the 1977 action.

In March of 1978 Litton and Frigitemp entered into a second arbitration agreement ("the second arbitration agreement"). The second agreement provided, *inter alia*, for the arbitration of all disputes, but that Litton could unilaterally terminate arbitration proceedings and the agreement to arbitrate if Frigitemp became insolvent or filed a bankruptcy petition.

A few days later Frigitemp filed a petition under Chapter 11, 11 U.S.C. § 1101 *et seq.*, in the Southern District of New York. All actions against Frigitemp were immediately stayed.

In May of 1979 Frigitemp was adjudicated a bankrupt. Litton had never filed a claim or otherwise appeared in the Chapter 11 or bankruptcy proceedings. Shortly thereafter Litton gave notice of termination of the arbitration agreements.

In September of 1979 Litton filed a complaint here in the Bankruptcy Court, appearing specially, seeking to vacate the bankruptcy court's stay of Litton's 1977 Mississippi action against Frigitemp. Discovery was conducted in that proceeding; in February of 1980 the trustee moved to compel answers to certain interrogatories and to obtain certain documents. Litton objected on grounds of relevance to discovery related to the validity or applicability of the arbitration agreements claiming that the Bankruptcy Court had no jurisdiction over the arbitration agreements. Litton also objected to other demands on grounds of privilege for attorney-client communications and trial preparation materials. In March, 1980 Litton moved for summary judgment to vacate the stay of the 1977 Mississippi action.

In March, 1980 Litton filed two suits against the Trustee in federal court in Mississippi, one S80–0371(R) seeking declaratory judgment that the arbitration agreements were null and void, the other S80–0372(C) seeking damages for breach of contract.

The Trustee meanwhile instituted two arbitration proceedings, one in New Orleans and one in Washington, D. C., and moved in Litton's action in the bankruptcy court here for an order approving arbitration as the method for the settlement of the dispute between the Trustee and Litton. The Trustee then filed a complaint against Litton in the bankruptcy court here seeking to enjoin Litton from prosecuting the two 1980 Mississippi actions. Litton counterclaimed for leave to prosecute the two 1980 Mississippi actions and moved for summary judgment.

The trustee also filed several other suits during the spring of 1980: one in Superior Court, New Castle County, Delaware, for breach of contract, one in federal court in Louisiana, and a third in federal court for the District of Columbia, the latter two seeking to compel Litton to arbitrate.

As noted above in May 1980 Judge Lewittes denied the Trustee's motion to compel the disputes to be settled by arbitration; granted summary judgment in favor of Litton lifting the stay of Litton's 1977 Mississippi action; and granted summary judgment to Litton lifting the stay so as to permit Litton to prosecute its 1980 Mississippi action contesting the validity of the arbitration agreements. The Judge denied Littons's motion to lift the stay as to the 1980 Mississippi action for contract damages. In addition Judge Lewittes refused to compel certain disclosure on Litton's part.

### Jurisdiction over Litton on the Arbitration Dispute

The cornerstone of Judge Lewittes' rulings was his finding that the bankruptcy court is without jurisdiction to adjudicate, as against Litton, the validity or applicability of the arbitration agreements or the rights arising under these agreements.

◼ Litton did not file a claim in the bankruptcy proceeding; it has accordingly waived any rights it may have had to recover its entitlements under the 1977 action as against the bankrupt estate; its recovery rights in the prosecution of that action would lie only against a surplus which survived the satisfaction of all claiming creditors in the bankruptcy proceeding, or, as a set-off, against any liability of Litton to Frigitemp.

The Trustee, on the other hand, is seeking to assert contract rights of two types against Litton, the first being its claimed contractual right to arbitrate disputes, the second being its claimed rights to further payments and damages under the shipbuilding subcontracts. (The Trustee claims that his major assets are his contract claims against Litton.)

Under these circumstances the bankruptcy judge correctly found no basis for assertion of jurisdiction over Litton.[1] There is no *res* in the hands of the Trustee against which Litton is asserting any claim, other than against a theoretical surplus after satisfaction of all the Trustee's obligations. Nor can Litton be required to submit to the summary jurisdiction of the bankruptcy court for adjudication of the Trustee's contract rights against it. *See In re Roman*, 23 F.2d 556 (2 Cir. 1928). A different result would follow if the dispute centered on conflicting rights over property in the Trustee's possession. *See Board of Trade v. Johnson*, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924). But where there is no property in the possession of the trustee (or the bankruptcy court) and a third party asserts a substantial (and not merely colorable) claim adverse to the trustee involving disputed issues of fact, the third party has the right to have the merits adjudicated in a plenary action. *Hollywood Nat'l Bank v. Bumb*, 409 F.2d 23 (9 Cir. 1969); *Dexter v. Gilbert (In re Kirchoff Frozen Foods, Inc.)*, 496 F.2d 84 (9 Cir. 1974), aff'g 375 F.Supp. 156 (D.Ariz.1972); *In re Eakin*, 154 F.2d 717 (2 Cir. 1946); *In re Roman, supra.*

■ The Trustee claims that his rights under the arbitration agreement constitute property within his possession and subject to the jurisdiction of the bankruptcy court (like the stock exchange seat in *Bd. of Trade v. Johnson, supra*). While the distinction may be difficult to delineate with precision, it seems clear that the Trustee's rights under the arbitration agreements are not a *res* in his possession but fall more in the category of a chose in action which cannot be enforced against the adverse party except in a court of plenary jurisdiction. The Trustee seeking to enforce those rights must do so in a court of plenary jurisdiction over the adversary, to the same extent as the bankrupt entity would have had to do so had it not become bankrupt and come within the bankruptcy court's protection. *See In re Roman, supra*; 2 *Collier on Bankruptcy* ¶ 23.05 at 492 (14th ed.).

The cases of *Tobin v. Plein*, 301 F.2d 378 (2 Cir. 1962), and *Truck Drivers Local Union No. 807 v. Bohack Corp.*, 541 F.2d 312 (2 Cir. 1976), do not support the Trustee's position, for in neither case did the adverse party to the arbitration agreement contest the jurisdiction of the bankruptcy court over that agreement. The question here disputed was therefore not discussed in either decision.

■ Nor does Litton's filing of its complaints in the bankruptcy court seeking vacation of the stay of its actions in other courts amount to a consent to the bankruptcy court's jurisdiction or a waiver. Litton has maintained the clear position that it does not consent to the bankruptcy court's jurisdiction. It has designated its appearance as "special" and only for the purpose of lifting the stay which prevents it from proceeding in other jurisdictions. It has certainly not consented knowingly or voluntarily. Nor is there any basis for considering its appearance for such limited purpose as constituting a waiver. *See In re Eakin*, 154 F.2d 717 (2 Cir. 1946).

Being without jurisdiction to order enforcement of the trustee's rights under the arbitration agreement against Litton, Judge Lewittes correctly denied the Trustee's motion for such an order. His ruling does not bar the Trustee from instituting arbitration proceedings and seeking to compel Litton (in a court of competent jurisdiction) to be bound by them. To the contrary, the Trustee was authorized to engage in such proceedings. The denial is only as to an order which would be binding on Litton.

■ The rulings lifting the automatic stay of litigation against Frigitemp so as to permit Litton to prosecute the 1977 Mississippi action and the 1980 action for declaration of invalidity of the arbitration agreements were, in my opinion, proper exercises of the bankruptcy judge's discretion.

■ The purpose of the automatic stay provided by Rule 401, Rules of Bank.Proc.,

---

1. The law applicable is the old bankruptcy law, pre-existing the 1978 Bankruptcy Act.

and 11 U.S.C. § 362 is to give the insolvent debtor an opportunity to take stock and formulate plans for repayment and reorganization with protection from

> a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.

*Fidelity Mortgage Investors v. Camelia Builders, Inc. (In re Fidelity Mortgage Investors)*, 550 F.2d 47, 55 (2 Cir. 1976), *cert. den.* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540, *reh. den.*, 430 U.S. 976, 97 S.Ct. 1670, 52 L.Ed.2d 372 (1977). The rule explicitly authorizes the bankruptcy court to lift the stay "for cause shown". Rule 401(d). The decision whether or not to lift such a stay is left to the discretion of the bankruptcy judge, the issue on review being whether there was abuse of discretion. *See* 1A *Collier on Bankruptcy* ¶ 11.06 at 1164 (14 ed.); *In re Rosenstein*, 276 Fed. 704 (2 Cir. 1921); *In re Gerstenzang*, 52 F.2d 863 (S.D.N.Y. 1931).

I find that the bankruptcy judge's decision was careful and reasoned, giving due weight to the circumstances involved.

This limited lifting of the stay did not subject the trustee to the kind of chaotic harassment and multi-front warfare described in *Fidelity Mortgage Investors, supra*. The circumstances affecting this issue were very different. The resolution of conflicting claims as between Litton and the bankrupt Frigitemp involves very large amounts of money and indeed will be the principal determinant whether Frigitemp emerges with any significant assets. For reasons set forth in the preceding discussion the bankruptcy court is without jurisdiction over the dispute. Both sides to the dispute have taken aggressive litigious steps seeking to lodge the dispute in a forum which each regards as advantageous. As noted above, the Trustee in his attempt to avoid the Mississippi jurisdiction which he apparently perceives as disadvantageous has

lodged six different proceedings in four different places. As Judge Lewittes noted, it would be inappropriate to conclude that the Trustee was being subjected to multi-forum harassment.

In my opinion Judge Lewittes correctly ruled that the Trustee and his adversary, in this major dispute outside the jurisdiction of the bankruptcy court should be left free to fight out the resolution in whatever manner in whatever courts each sees fit.

The Trustee argues that the bankruptcy laws accord to the representative of the bankrupt the preferential right to choose the forum for the litigation of such a dispute.

Although there are undoubtedly instances in which it may be reasonable and appropriate for a bankruptcy court to refuse to lift a stay and thereby accord to the Trustee the opportunity to choose the forum, the cases cited by the Trustee do not support the proposition that the Trustee possesses a right to make such choice.[2] The policy underlying the automatic stay provision is to protect the Trustee from the chaos and the wasteful depletion resulting from multifold, uncoordinated and possibly conflicting litigation. It is not to give the Trustee an arbitrary advantage over its adversary in choice of forum matters.

The Trustee also argues it was inappropriate to lift the stay on summary judgment, contending that there are material issues of fact to be resolved by trial. The issues of fact to which the Trustee points relate to the question of the most convenient forum. Given Judge Lewittes' perception that the resolution of the major dispute lies outside his jurisdiction and that the parties should be left to fight out where, how, and to what result it should be resolved, it was appropriate for Judge Lewittes to leave questions of convenient forum to be litigated in the Mississippi court, or

---

2. *Meyer v. Fleming*, 327 U.S. 161, 66 S.Ct. 382, 90 L.Ed. 595 (1946); *Sherman v. Buckley*, 119 F.2d 280 (2 Cir.), *cert. denied*, 314 U.S. 657, 62 S.Ct. 110, 86 L.Ed. 527 (1941); *American Foods, Inc. v. Dezauche*, 74 F.Supp. 681 (W.D. N.Y.1947); *Thompson v. Tulchin*, 535 F.2d 1388 (2 Cir. 1976); *Jaytee-Penndel Co. v. Bloor (In re Investors Funding Corp.)*, 547 F.2d 13 (2 Cir. 1976); *Fidelity Mtge. Investors v. Camelia Builders, supra, Application of Reich*, 146 F.2d 162 (2 Cir. 1944).

conceivably in another court having jurisdiction. These issues of fact were not "material" to the discretionary decision in the bankruptcy court.

#### Section 4 of the Arbitration Act

The Trustee also contends that Section 4 of the Federal Arbitration Act bars submission of Litton's 1980 action contesting the validity of the arbitration agreements to the Mississippi court.

The statute directs that "[arbitration] proceedings shall be within the district in which the petition for an order directing such arbitration is filed." It has been held furthermore that such a petition to compel arbitration should be filed in the district where the agreement contemplates arbitration. *Lawn v. Franklin*, 328 F.Supp. 791, 793 (S.D.N.Y.1971).

■ Since the arbitration agreement names Washington, D. C. and New Orleans as the "principal" hearing "locales", plaintiff argues that a petition to compel arbitration should be lodged in one of those places and that an action to declare the invalidity of the arbitration agreements, raising the same questions, should be limited to the same jurisdictions.

While there are good reasons in fairness and in the interest of order to require that a petition to *compel* arbitration be lodged in the jurisdiction where arbitration had been agreed to, it does not follow, except on superficial reasoning, that an action to defeat an arbitration agreement should be so limited. For the party seeking to compel the arbitration contends that both he and his adversary have agreed to proceedings resolving the dispute in the named jurisdiction and seeks an order which will result in further proceedings in that district. There may therefore be considerable unfairness in allowing the party who seeks to compel arbitration in one jurisdiction to require the adverse party to defend against the petition in another jurisdiction. Where a party is seeking to set aside an arbitration agreement the matters are reversed. The party seeking relief does *not* contemplate further proceedings in jurisdictions named in the

arbitration agreement. To the contrary, in all likelihood, as in this case, that party contemplates that if his position is sustained no proceedings will take place at the arbitration location; instead the further proceedings will be in court in the same jurisdiction where the action to set aside the agreement is lodged. Thus the reasons which favor restricting the petition to compel to the arbitration district do not apply to an action to set aside, even though the same questions of law and fact will be involved.

Furthermore, the issue of the arbitration agreement has already been raised by the Trustee in the Mississippi federal court in his answer to the 1977 action by which he raised the arbitration agreement as a defense and counterclaim. Litton's 1980 action to set aside the arbitration agreements might also have been pleaded as a reply in that action. If the Trustee contends that these questions should not be heard in Mississippi but rather in one of his actions to compel arbitration, he may advance this position in the appropriate courts.

#### Discovery Rulings

■ Judge Lewittes refused to compel certain of the Trustee's discovery demands on the grounds that these items pertaining to the validity and enforceability of the arbitration agreements were relevant only to a dispute beyond the court's jurisdiction. As noted above, Judge Lewittes correctly ruled that the bankruptcy court lacked jurisdiction over Litton concerning the enforcement of the arbitration agreements. The same was true as to discovery of Litton in connection with those matters. This discovery may be conducted in a court having jurisdiction of the parties in connection with the arbitration dispute.

■ The Trustee also appeals from certain rulings entered by Judge Lewittes on April 23, 1980, sustaining Litton's claim of privilege as to certain documents relating to the merits as attorney client communications or trial preparation materials. Approximately one week after making these

rulings, Judge Lewittes made the rulings here affirmed lifting the stay as to two of Litton's Mississippi actions as well as authorizing the Trustee to seek to advance the litigation in other courts of his choice. What is clear is that this discovery relates to disputes which will be litigated before courts other than this one. The relevant discovery should be supervised and ruled on by those courts which will have the actions before them, rather than by this court. Accordingly, those rulings set forth under headings B and C of Judge Lewittes' April 23 opinion are directed to be vacated. The Trustee may renew his demands for this discovery and Litton may renew its objections before any court of competent jurisdiction before which proceedings are heard.

In all other respects, the rulings appealed from are hereby affirmed.