In re JOHNS–MANVILLE CORPORA-
TION, et al., Debtors.

COMMERCIAL UNION INSURANCE
CO., Plaintiff-Appellant,

v.

JOHNS–MANVILLE CORPORATION,
Johns-Manville Sales Corporation, and
Johns-Manville International Corporation, and Keene Corporation, Defendants-Appellees.

No. 82 Civ. 8189–CSH.
Bankruptcy Nos. 82 B 11656 (BRL)
through 82 B 11676 (BRL).
Adv. No. 82–6169A.

United States District Court,
S.D. New York.

April 21, 1983.

Palmer & Dodge, Boston, Mass., Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for plaintiff-appellant;

Laurence M. Johnson, Gordon L. Doerfer, Steve L. Schreckinger, Victor Bass, Boston, Mass., William M. Silverman, Morton L. Gitter, Gary S. Mayerson, New York City, of counsel.

Davis, Polk & Wardwell, Levin & Weintraub & Crames, New York City, for defendants-appellees Johns-Manville Corporation, et al.; Philip C. Potter, Jr., New York City, of counsel.

Anderson, Russell, Kill & Olick, P.C., New York City, for defendant-appellee Keene Corp.; Arthur S. Olick, Jerold Oshinsky, Irene C. Warshauer, Laurence Y. Solarsh, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This much-publicized proceeding under Chapter 11 of the Bankruptcy Code was commenced by Johns-Manville Corporation ("J–M"), at the pertinent times a leading manufacturer of asbestos, and now confronted with many product liability claims. The liability of asbestos manufacturers and their insurers for asbestosis and other product-related disease has generated extensive litigation. Commercial Union Insurance Co. ("CU") was one of J–M's insurers. On January 4, 1980, over two years before J–M filed its Chapter 11 petition, CU commenced a declaratory judgment action in the Superior Court of Massachusetts to resolve a dispute with J–M over policy coverage. J–M removed the action to the United States District Court for the District of Massachusetts, where it now pends.

J–M's Chapter 11 filing triggered an automatic stay of proceedings against it under the Code, 11 U.S.C. § 362(a)(1).[1] CU commenced an adversary proceeding in the bankruptcy court, seeking a declaration that the stay did not apply to its Massachusetts action, or in the alternative an order

---

1. Section 362(a)(1) provides:

"(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

"(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; ..."

lifting the stay under § 362(d)(1).[2] J–M opposed the application, as did intervenor Keene Corporation. After considering briefs and argument the bankruptcy court, Lifland, J., held that the stay applied to CU's action, and declined to lift it. CU appealed to this court. We affirm.

## I.

CU's appeal raises three questions of substance.[3] The first is whether the § 362(a)(1) automatic stay applies to CU's Massachusetts action. If it does, the second and third questions arise. Does CU have standing, as a "party in interest" under § 362(d), to request that the stay be lifted? If CU is a party in interest under the statute (as the parties and the court below evidently assumed), did Judge Lifland abuse his discretion in refusing to lift the stay?

Before addressing these questions, a further factual exposition will be useful. Asbestos manufacturers such as J–M maintained, over the years, layers of products liability insurance. Typically the cover consisted of a primary policy, covering claims up to a stated amount, after which excess policies attached. The identity of the insurance companies on the risk would change from time to time. Considerable time went by before medical science comprehended the causal connection between the inhalation of asbestos fibers and injury or death resulting from what is now called "asbestosis" and other asbestos-related diseases. Medical knowledge was closely followed by legal action. J–M, among other asbestos manufacturers, faces thousands of lawsuits claiming huge aggregate sums. Naturally enough, it looks to its liability insurers. Equally naturally, each insurer prefers that J–M look elsewhere.

The timing of coverage becomes crucial. This has given rise to the dispute between the "manifestation" theory of coverage and the "exposure" theory. Under the manifestation theory, "those insurers on the risk at the time the asbestos-related disease first manifested itself by way of medically diagnosable symptoms must provide coverage." Under the exposure theory, "those insurers on the risk at the time of [a particular claimant's] exposure to asbestos must indemnify" the insured "for a pro rata share of its liability, the proportion to be determined by the ratio of the number of years the insurer was on the risk to the total number of years of exposure." *Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance Company*, 682 F.2d 12, 16 (1st Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1280, 75 L.Ed.2d 500 (1983).

Several circuits have reached conflicting decisions in declaratory judgment actions springing up to address this issue. The First Circuit in *Eagle-Picher, supra,* came down in favor of the manifestation approach. The Sixth Circuit favored the exposure theory in *Insurance Co. of North America v. Forty-Eight Insulations, Inc.,* 633 F.2d 1212 (6th Cir.1980), *modified on reh'g,* 657 F.2d 814, *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). In *Keene Corp. v. Insurance Co. of North America,* 667 F.2d 1034 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982), the District of Columbia Circuit devised a rationale for holding that all insurers on the risk from the period of initial exposure to the time of manifestation must provide coverage. The Fifth Circuit reached the same conclusion in *Porter v. American Optical Co.,* 641 F.2d 1128 (5th Cir.), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). All lower courts purport to enforce the clear language of substantially similar policies. The Supreme Court has thus far kept out of the fray by

---

**2.** Section 362(d)(1) provides:

"(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

"(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; ..."

**3.** Those substantial questions do not include the appealability of the order below. While J–M challenges appealability, it is clearly established by recent Second Circuit authority. *In re Taddeo,* 685 F.2d 24, 26 n. 4 (2d Cir.1982).

denying certiorari whenever asked to grant it.

It is apparent from the vigor with which CU prosecutes this appeal that it prefers the manifestation theory of coverage, as articulated by the First Circuit in *Eagle-Picher*. That decision, of course, constitutes binding authority upon the District of Massachusetts, in the absence of Supreme Court review. CU's complaint against J–M in Massachusetts deals with coverage allegedly provided to J–M by CU or its predecessor during early primary coverage years of 1934–1948. J–M's amended counterclaim against CU in Massachusetts alleges primary coverage through 1951. It is a fair inference that the manifestation theory operates to the advantage of insurers whose policies covered the earlier years.

On March 31, 1980, after J–M joined issue in the Massachusetts action, it filed its own declaratory judgment action in the California Superior Court at San Francisco against a number of insurers, including CU. It appears to be common ground that J–M's California complaint, as originally filed, did not include any declaration of rights against CU in respect of early primary coverage (1934–1948) for J–M's domestic entities, although the California suit did refer to primary coverage during those years of J–M's Canadian entities. CU stressed that omission when, in January 1981, J–M moved in the Massachusetts action to stay proceedings there. After submission of briefs and oral argument on that motion, J–M and CU entered into a settlement of the issues it raised. Specifically, J–M and CU agreed that all issues with respect to coverage allegedly provided to J–M and its domestic and Canadian subsidiaries by CU or its predecessor during the early primary coverage years of 1934–1948 would continue to be litigated in the Massachusetts action, and not in the California action. Conversely, the parties agreed that all issues with respect to the alleged "excess coverage years" of 1960–1963 and 1966–1972 would be litigated in the California action, and not in the Massachusetts action. This agreement was memorialized in a court-endorsed order on February 12, 1981 in the Massachusetts action.

That order, executed by a United States Magistrate on consent of the parties, provided in its final decretal paragraph as follows:

"All proceedings in this case as to claims between the parties relating to excess coverage for the periods July 1, 1960 through July 1, 1963 and March 18, 1966 through July 1, 1972 are stayed until entry of final Judgment in *Johns-Manville, et al v. The Home Insurance Company, et al, supra* [the California action]. All proceedings in this case as to claims between the parties relating to primary domestic and Canadian coverage for the period 1934 through 1948 shall continue."

On August 25, 1982, J–M submitted to the California court an amended complaint. It appears to be common ground that, under the amended complaint, the California action would embrace all issues in the Massachusetts action. The next day, on August 26, J–M filed its petition for reorganization under Chapter 11 in the court below.

The position J–M now takes is that CU's Massachusetts action is stayed by § 362(a)(1), as the consequence of J–M's Chapter 11 filing; but that, since J–M initiated the California action, that action is not affected in any way by the stay.

On March 2, 1983, Judge Ira A. Brown, Jr., the coordinating judge appointed by the California court, granted J–M's motion to amend its complaint, subject to entertaining a motion to sever and stay the CU early primary coverage issues, in the event that the stay of the Massachusetts case is lifted.

Against this factual background, we consider the questions raised on this appeal.

## II.

■ CU's threshold argument is that the declaratory judgment action it commenced against J–M in Massachusetts does not fall within the ambit of the automatic stay provided for by § 362(a)(1) of the Bankruptcy Code.

The argument must confront the broad language which Congress employed in drafting the statute. The filing of a Chapter 11 petition operates as a stay of, *inter*

*alia,* "the ... continuation of a judicial ... proceeding against the debtor that was ... commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; ..."

In CU's analysis, "[t]he purpose of the automatic stay is the protection of the debtor and his estate from his creditors." It follows, in CU's view, that the automatic stay "has no applicability to a proceeding such as the early primary coverage case," whose thrust "is not any effort by a creditor to pursue a claim against the debtor's property, but rather, to identify, determine, and marshal the property of the debtor's state." In other words, CU's Massachusetts declaratory judgment action is not subject to the automatic stay "because it does not interfere with or diminish the property of the debtors during the pendency of Chapter 11 proceedings." Main Brief at 27, 32–3.

This analysis would have greater force if the automatic stay of § 362(a)(1) was characterized solely as halting judicial proceedings "to recover a claim against the debtor...," the purpose articulated by the concluding phrase of the section. However, that phrase is preceded by the significant word "or," a disjunctive connector which suggests that the preceding language is in some manner different in kind from what follows. And that preceding language provides for the stay of "the commencement or continuation" of "a judicial, administrative or other proceeding against the debtor," the only requirement being that the proceeding "was or could have been commenced before the commencement" of the bankruptcy proceeding. It is difficult to imagine more

broad language; and it clearly embraces proceedings other than those contemplated by the following phrase, namely, "to recover a claim against the debtor..."

It is also apparent that, when Congress wished to exempt a particular sort of proceeding from the automatic stay of § 362(a), it knew how to do so. Thus, § 362(b) provides that the filing of the petition does not operate as a stay with respect to a series of particularly described, specified actions. An action such as the present one, to declare the rights between an insurance company and debtor, does not fall within any of the specified exceptions.

These circumstances militate against CU's contention that the automatic stay does not affect its Massachusetts declaratory judgment action. But CU insists that case law supports its position. Particular reliance is placed upon three cases: *Power-Pak Products, Inc. v. Royal-Globe Insurance Company,* 433 F.Supp. 684 (W.D.N.Y.1977); *In re Frigitemp Corp.,* 8 B.R. 284 (S.D.N.Y. 1981); and *Shell Pipeline Corp. v. West Texas Marketing Corp.,* 540 F.Supp. 1155 (S.D.Tex.1982). The *Power-Pak* case, in particular, is said to be "very nearly on point with the instant case." Main Brief at 37.

That is something of an exaggeration. While *Power-Pak* concerned a declaratory judgment action involving a Chapter 11 petitioner and its insurers, the case does not address the issue raised here, namely, whether the bankruptcy stay applies to such a proceeding. On the contrary, the litigants appear to have assumed that it did. The case turns upon the question of whether the bankruptcy judge abused his discretion in terminating the stay.[4]

---

**4.** The insurance policy in *Power-Pak* covered property in South Carolina against loss by fire. Royal Globe issued the policy to a number of corporations. Following a casualty, Royal Globe rejected the insureds' claims, and instituted an action in South Carolina for a declaration of its obligations under the policy. "Suit was not commenced against Power-Pak [one of the insured corporations] because, under Bankruptcy Rule 11–44, an automatic stay of the action as to it resulted from Power-Pak's filing under Chapter 11." 433 F.Supp. at 685. Subsequently other corporate insureds filed Chapter 11 bankruptcy petitions. "Thereupon, the South Carolina actions against them wre automatically stayed pursuant to Bankruptcy Rule 11–44." *Ibid.* Rule 11–44 was the predecessor of § 362(a). Apparently Royal Globe did not suggest that the stay did not apply to its declaratory judgment action against the Chapter 11 debtors, and Judge Elfvin on the appeal from the bankruptcy judge's order lifting the stay did not discuss the issue. Thus it is quixotic for CU to characterize *Power-Pak* as authority for the inapplicability of a § 362(a) stay to its Massachusetts declaratory judgment action.

*In re Frigitemp Corp., supra,* presents a comparable holding. Judge Leval of this court affirmed the action of the bankruptcy court in granting a "limited lifting of the stay" of an action against the debtor in the Southern District of Mississippi, upholding the bankruptcy court's action as a proper exercise of discretion. Again, no one suggested that the stay was not applicable to the proceeding *ab initio.*

CU's third primary authority is *Shell Pipeline Corp. v. West Texas Marketing Corp., supra.* The case is equally inapposite, albeit for different reasons. An entity called Energy Cooperative, Inc. ("ECI") filed a voluntary Chapter 11 petition in bankruptcy on May 15, 1981 in Chicago bankruptcy court. Shell Pipeline Corp. ("Shell") was subsequently confronted with conflicting claims as to which company should receive 155,000 barrels of fuel oil during the month of May. 540 F.Supp. at 1157 n. 3. Shell filed an action in the Southern District of Texas for interpleader under 28 U.S.C. § 1335. Trial of the interpleader action would determine title to the oil among several rival claimants, including ECI. ECI argued that Shell's initiation of the interpleader action violated the automatic stay provisions of § 362(a). The district court disagreed, on the authority of *Dakota Livestock Company v. Keim,* 552 F.2d 1302, 1305 (8th Cir.1977), which stated generally:

> "If a party is in the actual possession of money or property the ownership of which is disputed, his right to interplead the funds is not affected by the fact that one of the claimants is a trustee in bankruptcy who contends that the funds belong to the estate that he is administering."

This perfectly sensible proposition furnishes no guidance in the case at bar. Shell possessed oil which it knew it should deliver to someone else, but could not be sure who: hence the interpleader. The oil in *Shell* bears no useful analogy to the insurance policies in the case at bar. It takes at least three to tango in interpleader: a stakeholder and a minimum of two claimants, with the stakeholder indifferent as to the outcome. The insurance coverage dispute in the case at bar pits CU against J–M. There is either coverage or there is not. CU cares passionately about the outcome. The *Shell* rationale, within the context of the bankruptcy stay, depends entirely upon the unique characteristics of interpleader. The interpleader rationale, in my judgment, does not transplant into other soil.

To hold that CU's Massachusetts declaratory judgment action falls outside the scope of § 362(a) would be to disregard the plain wording of the statute. Judge Lifland correctly concluded that the stay applied to the action.

### III.

■ Alternatively, CU asked Judge Lifland to modify the stay "for cause," so that the Massachusetts action could go forward. The bankruptcy judge denied that application.

On January 13, 1983, the Second Circuit decided *In re Comcoach Corporation,* 698 F.2d 571 (2d Cir.1983). In *Comcoach* the court of appeals stated generally: "To qualify for the 'for cause' relief provided in section 362(d)(1), it is necessary that the party seeking such relief be a 'party in interest.' 11 U.S.C. § 362(d)." At 573. The court then considered whether the Roslyn Savings Bank, which sought relief in *Comcoach,* was a "party in interest" as that phrase is used in the Bankruptcy Code, and answered that question in the negative.

In the case at bar, neither the parties nor the bankruptcy judge had considered this question. This court called the *Comcoach* decision to the parties' attention, and asked them to comment upon it. Helpful additional submissions were forthcoming. We now hold that CU should, in the circumstances of this case, be regarded as a "party in interest."

In *Comcoach* the bank held a mortgage it desired to foreclose, the mortgagor having defaulted on its payments. The bank instituted a foreclosure proceeding against the mortgagor in New York State Supreme Court. Comcoach, the tenant in possession of the mortgaged premises, was neither named as a party-defendant nor served

with process. Comcoach thereafter filed a Chapter 11 petition, and stopped paying rent. The bank viewed itself as barred from conducting the state foreclosure action by virtue of the automatic stay provision of the Bankruptcy Code, and applied under § 362(d)(1) to lift the stay to enable it to name Comcoach as a party-defendant in the pending state foreclosure action. The bankruptcy court and the district court held that the bank was not a "party in interest" entitled to seek modification of the stay under the Code. The court of appeals affirmed.

While recognizing that the term "party in interest" is not defined in the Code, Judge Cardemone's opinion states generally:

"Bankruptcy courts were established to provide a forum where creditors and debtors could settle their disputes and thereby effectuate the objectives of the statute. Necessarily, therefore, the Bank must be either a creditor or a debtor to invoke the court's jurisdiction." 698 F.2d at 573.

The court then addressed the status of the bank:

"Turning to the particular facts of this case, the Bank is clearly not a debtor. Nor is the Bank a 'creditor' of the bankrupt. The Code in pertinent part defines a creditor as an entity that has a claim against either the debtor or the estate, arising at certain specified times. 11 U.S.C. § 101(9)(A), (B) (Supp. V 1981). A claim means a right to payment, id. at § 101(4)(A) (Supp. V 1981), or 'a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment,' id. at § 101(4)(B). The Bank here has no right to payment from the bankrupt, since the bankrupt has no obligation on the mortgage and the bankrupt's duty to pay rent on its lease runs only to Rhone, not the Bank. Moreover, the Bank lacks any right to equitable relief against the bankrupt arising out of a breach of performance giving rise to a right to payment. Consequently, the Bank possesses no claim against the debtor or the estate, lacks 'creditor' status, and cannot move to lift the automatic stay." *Id.* at 574.

Having denied the bank standing to apply to modify the stay, the Second Circuit went on to demonstrate that the bank could easily obtain a remedy. The state foreclosure action was not stayed by the bankruptcy petition; and the bank had the right to the appointment of a receiver in that action. A court-appointed receiver would qualify as a party in interest for purposes of § 362(d); and so the receiver, acting for the creditor-bank's benefit, would have the right to sue Comcoach for rent and, therefore, the right to move to lift the automatic stay. At 474–475.

The quoted language from the *Comcoach* opinion may appear, at first blush, broad enough to encompass the present case. But the interest of CU in the litigation is different from that of the bank in *Comcoach.* The bank had no relationship with the debtor-tenant, except for that fortuitous one arising from the debtor's status as tenant of the defaulting mortgagor. Thus the court of appeals could say without hesitation that the bank was neither a debtor nor a creditor of the bankrupt. In the case at bar, if CU is held to be an insurer of J–M's liability for disease, CU may be regarded as a debtor of the debtor. Judge Elfvin so regarded the debtor's insurer in *Power-Pak Products, supra,* 433 F.Supp. at 687. One cannot be certain that the Second Circuit would extend the *Comcoach* rationale to this different relationship.

In addition, the court of appeals was apparently influenced in *Comcoach* by the fact that the bank had misapprehended its remedies in the state court foreclosure proceeding. By taking certain procedural steps, the bank was in a position to avoid any prejudice resulting from its own lack of "party in interest" status. No such ameliorating factor appears in the case at bar. CU is presently stayed from pressing its Massachusetts action. If CU cannot seek relief from the stay, no stratagem exists whereby another may do so for CU's benefit.

Finally, subsequent to the district court's opinion in *Comcoach* the bankruptcy was converted from a Chapter 11 reorganization

to a Chapter VII liquidation. The Second Circuit in *Comcoach* did not consider the possible effect of 11 U.S.C. § 1109(b), applicable to Chapter 11 reorganizations, which provides:

"A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

This language is arguably broader in its definition of "party in interest" than the language of § 362(d)(1).

Since if CU cannot seek relief from the stay no one can do so on its behalf, we would be reluctant to deny CU standing as a "party in interest" unless compelled by the *Comcoach* decision to do so. For the foregoing reasons, we feel no such compulsion. Consequently we conclude that CU has the requisite status as a party in interest to contend that Judge Lifland abused his discretion in failing to modify the bankruptcy stay.

## IV.

On that issue, the parties debate the scope of this court's review. CU argues that in the wake of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), bankruptcy judges' opinions are devalued. The Emergency Rule adopted by this district and others gives some support to the argument, providing as it does that "[i]n conducting review, the district judge ... need give no deference to the findings of the bankruptcy judge." Subsection (e)(2)(B). CU accordingly urges a review *de novo* here.

In pre-*Marathon* days, because the bankruptcy judge was recognized as "the most knowledgeable about the debtor's affairs," it was regarded as "essential that he make the determination as to whether an action against the debtor may proceed or whether the stay in such actions should remain in effect." *Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3rd Cir.1982). In *Frigitemp Corp., supra,* Judge Leval characterized liftings of

the automatic stay as "proper exercises of the bankruptcy judge's discretion." 8 B.R. at 288. This would argue for a standard of review in the district court based on abuse of discretion. Judge Elfvin in *Power-Pak Products, supra,* would apparently apply the abuse of discretion standard to a bankruptcy judge's refusal to modify the stay, but a broader scope of review to an order dissolving it. 433 F.Supp. at 687. The bankruptcy judge's factual findings were entitled to considerable deference. *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 104 (3rd Cir.1982) ("A reviewing court may not substitute its own findings for those of [the bankruptcy court] merely because it finds other inferences more likely.").

In the case at bar, we need not choose between these standards because, measured by either of them, Judge Lifland acted correctly.

Judge Lifland concluded that all issues concerning J–M's insurance coverage should be decided in the California action. By virtue of J–M's amended complaint, now approved by the California judge, all the company's insurers, primary and excess (including CU), all the J–M entities (foreign and domestic), and all periods of time of coverage are now embraced in litigation in one forum: California. That cannot be said of the Massachusetts action, which pits J–M only against CU, and even there, only in respect of the early primary coverage years.

We see no basis to quarrel with Judge Lifland's conclusion that "there should be only one forum to determine all of these major issues." Tr. at 76. In so holding, Judge Lifland cited and followed Judge Weinfeld's opinion in *American Motorists Insurance Co. v. Philip Carey Corp.,* 482 F.Supp. 711 (S.D.N.Y.1980). CU argues that *American Motorists* is factually distinguishable, but we are not persuaded that it is. On the contrary: the case is closely analogous. There being no bankruptcy petition in the case, *American Motorists* casts Judge Weinfeld in the role of Judge Lifland. An insurer commenced a declaratory judgment action in this court against its assured and two other insurers of that as-

sured. The assured manufactured and sold materials containing asbestos fibers. Like J–M, it faced a flood of death and injury claims. The same debate between the "exposure" and "manifestation" theories of coverage surfaced. Plaintiff American Motorists Insurance Company sought in this court a declaration favorable to itself. The action involved only the insured and three of its insurance carriers. Several months after the commencement of the action here, the assured filed an action in a Florida state court against all its 14 insurance carriers, primary and secondary, including the insurers present in the New York action. Judge Weinfeld, over the opposition of two of the insurers before him, stayed the proceedings here pending resolution of the issues in Florida. Judge Weinfeld wrote:

"It cannot be seriously challenged that as to all 14 insurance companies in the Florida action that court has subject matter and in personam jurisdiction and that all parties who have rights or obligations under the policies issued by the defendants are before that court; that each litigant is in a position to advance whatever its respective position is either by way of defense, claim or cross-claim; and that a judgment would have res judicata effect. So, too, it cannot be questioned that in this action, with only three insurance carriers and Carey as litigants, any judgment would be binding only on them and that a determination conceivably may differ from that entered in the Florida action." 482 F.Supp. at 713.

He thereafter concluded:

"This Court is persuaded that substantial factors counsel a stay of this action in deference to the state action where a binding judgment may be obtained determining the rights of all interested parties and would, in the end result, eliminate additional and proliferating litigation." Id. at 715.

Judge Weinfeld's analysis in *American Motorists* applies to the case at bar, whose facts it closely resembles, as Judge Lifland recognized. The only hesitation the bankruptcy judge expressed in following *American Motorists* arose from the fact that when the parties were before him, an issue was pending "as to whether or not the California action does indeed encompass all of the issues between the parties." Tr. at 76–77. That issue turned, as Judge Lifland also recognized, upon the disposition of "the motion to allow the amended complaint which would bring into focus, if granted, all of the issues in one place." Id. at 77. In pressing its appeal here, CU argues that "[t]he litigation in California does not even raise, and therefore will not resolve, all the issues raised between J–M and CU in the Massachusetts action." Main Brief at 67. But this is no longer true, the California judge having granted J–M's motion to amend its complaint. With that ruling, the only objection of substance to the California forum disappears. We are mindful of CU's concern that certain important witnesses in Massachusetts are growing old and infirm, but we are not persuaded that the California judge would be unreceptive to applications for expedited depositions, on an appropriate showing.

CU emphasizes J–M's prior negotiated agreement to litigate certain issues with CU in Massachusetts. That agreement was embodied in an order of court endorsed by a magistrate. CU argues with great energy that it is wrong for J–M to try to evade the terms of a court order embodying J–M's jurisdictional agreement; and that it was equally wrong of the bankruptcy court to permit that evasion. It is true that no comparable court order existed in *American Motorists*. But the effect of that order, and the agreement which generated it, upon the case at bar remains to be considered.

No question of substance arises from the fact that J–M agreed to litigate certain issues in Massachusetts. CU's present outrage is understandable in human terms, but without support in law. The parties entered into their jurisdictional stipulation in Massachusetts over 18 months before J–M filed its Chapter 11 petition. J–M took that step, its counsel aver, because it was faced by a "flood of litigation ... coupled with the refusal by a number of J–M's insurance carriers, including CU, to acknowledge their obligations to indemnify and defend J–M against claims arising in such asbestos health litigation." J–M Brief at 2. In re-

citing J–M's reasons for invoking Chapter 11, we express no view on whether that invocation constituted an appropriate use of the Bankruptcy Code. That is an entirely separate question. But it is apparent that, in filing its bankruptcy petition, J–M was motivated by far greater considerations then a desire to avoid a particular jurisdiction for the resolution of one of a myriad of suits of differing types. To be sure, J–M had previously entered into an agreement with CU with respect to the manner in which certain disputes between them would be resolved. But that agreement is fairly analogous to a pre-bankruptcy arbitration agreement; and the Second Circuit has held that a debtor in Chapter 11 may, with the approval of the bankruptcy court, reject a contract requiring it to arbitrate disputes. *Truck Drivers Local Union No. 807 v. Bohack Corp.*, 541 F.2d 312, 320 (2d Cir.1976); see also *Transmarittina Sarda Italnavi v. Foremost Insurance Co.*, 482 F.Supp. 110, 114–15 (S.D.N.Y.1979). At least one bankruptcy court has held that the automatic stay of § 362(a) "is broad and was designed to reach all proceedings, including . . . arbitrations," *Matter of R.S. Pinellas Motel Partnership*, 2 B.R. 113, 117–18 (M.D.Fla. 1979).

The presence of a court order solemnizing the parties' jurisdictional agreement is an additional factor, the effect of which is not considered by any case the parties cite or that the court has been able to discover. But *David v. Hooker, Ltd.*, 560 F.2d 412 (9th Cir.1977), furnishes some instruction. In litigation prior to the filing of defendant's bankruptcy petition, the trial court had ordered the defendant to comply with a discovery order. Following filing of its bankruptcy petition, the defendant took the petition that the discovery order was stayed together with the litigation, that it no longer needed to comply, and that it was not subject to sanctions for non-compliance under Rule 37(b)(2), F.R.Civ.P. The Ninth Circuit held that the discovery order would be enforced, notwithstanding the bankruptcy stay. Analyzing the discovery order, the court said that "it does not involve a determination of the ultimate obligation of the bankrupt"; imposing a sanction on the defendant for failure to comply "in no way affects the operation of the stay in the main proceeding." 560 F.2d at 418. Surely this language suggests that if the order in the pre-bankruptcy litigation impacted significantly upon the administration of the bankrupt's estate, the order would be stayed along with the litigation of which it formed a part.

In the case at bar, the determination of J–M's rights under its insurance policies is of central importance to its estate, and to the ultimate prospects of proposing a plan for reorganization under Chapter 11. The order of the Massachusetts court, if permitted to continue to control the conduct of the parties to that action, would interrupt orderly bankruptcy administration, and lead to precisely the same practical problems summarized by Judge Weinfeld in *American Motorists*. In these circumstances, we conclude that the pre-existing order of the Massachusetts court did not foreclose Judge Lifland from exercising his discretion to preserve the stay.

CU bitterly condemns J–M for "forum shopping." When a litigant indicts his adversary on that charge, it is usually because he has forum preferences of his own. If J–M's commencement of the California action constitutes forum shopping, then CU's commencement of the adversary proceeding here constitutes forum clinging, and for a transparent reason: preference for the First Circuit construction of the policies, as declared in *Eagle-Picher, supra*. Until the law achieves that perfect uniformity of which commentators and draftsmen dream, forum shopping and forum clinging will continue to be a way of life for lawyers. We accept in principle CU's view that J–M should not be permitted unfairly to convert bankruptcy's protective shield into a sword of aggression. But we do not agree that, in the circumstances of this case, J–M is guilty of that practice.[5]

---

**5.** An example of unfair shield/sword conversion appears in *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160 (2d Cir.1979). The Chapter 11 debtor brought a plenary antitrust action against a creditor and others. The creditor sought to assert a counterclaim in that action.

In sum, we conclude that the resolution of J–M's relationships with its several insurers is of central importance to the bankruptcy proceeding; that it is preferable to resolve all these issues in a single forum; and that piecemeal adjudication of these issues in different forums would be counterproductive for readily apparent reasons. Holding those views, and for the reasons expressed herein, we affirm the order of the court below.

The bankruptcy judge enjoined the counterclaim. The Second Circuit reversed, holding that the judge had abused his discretion:

"We are not intimating that Bohack was guilty of bad faith in initiating the antitrust action. We are, however, cognizant of the precedential import of our rulings and must be cautious to avoid a decision which could convert Rule 11–44 from a shield into a weapon. Where a debtor institutes a lawsuit and then invokes the protection of Rule 11–44 on a counterclaim, the situation warrants a very thoughtful scrutiny. Just as the court has discretion to deny setoffs in appropriate cases, so the court has an equitable duty to grant a setoff when a debtor moves outside the confines of the bankruptcy court in an attempt to reap the benefits but circumvent the burdens in another forum."

"We find that the inequities in this case are weighted in Borden's favor and that it was an abuse of discretion to enjoin the counterclaim. Borden should be afforded the opportunity to pursue its setoff in a plenary proceeding before the antitrust court." 599 F.2d at 1168, 1169.

This case would be analogous to the case at bar if J–M, in addition to obtaining a stay of the Massachusetts action, also sought to bar CU from asserting its claims in the California action J–M initiated. However, J–M has by its amended complaint brought CU and the latter's claims before the California court. CU will have a full opportunity to pursue its remedies there. To be sure, CU is deprived of its preference for First Circuit precedent; but that is not a factor sufficient to overcome those which motivated Judge Lifland.