In re Carl H. NEUMAN, d/b/a Lydia E. Hall Hospital, Syosset Hospital and Long Island Food Company, Debtor.

SARAH R. NEUMAN FOUNDATION, INC., Plaintiff–Appellee,

v.

James GARRITY, Trustee, Defendant,

and

United States of America, Intervenor–Appellant.

Nos. 87 Civ. 3434 (JMC), 87 B 11704 (PBA).

United States District Court, S.D. New York.

Jan. 22, 1988.

Nancy Kilson, Asst. U.S. Atty., New York City, for intervenor-appellant.

Paul Curran, Ira Sacks, Robert Fracasso, Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiff-appellee.

William R. Grimes, Paul H. Silverman, Garrity, Connolly, Lewis, Lowry, Grimes & Silverman, New York City, for trustee, defendant.

## OPINION

CANNELLA, District Judge.

The April 22, 1987 Order of Bankruptcy Judge Prudence B. Abram is stayed. The matter is remanded for further proceedings consistent with this opinion.

## BACKGROUND

This is an appeal from an Order of Bankruptcy Judge Prudence B. Abram, entered on April 22, 1987, in an adversary proceeding brought by plaintiff-appellee the Sarah R. Neuman Foundation, Inc. [the "Foundation"] against James Garrity, the trustee of the estate of the debtor Carl H. Neuman d/b/a Lydia E. Hall Hospital, Syosset Hospital and Long Island Food Company ["Trustee" and "Debtor" respectively]. Neuman filed for Chapter 11 bankruptcy on December 11, 1984 and the Trustee was appointed on March 18, 1986. The Founda-

tion commenced this adversary proceeding on December 29, 1986. Appellant United States, the estate's largest creditor, was allowed to intervene in the proceeding in January 1987.

The Foundation, a proprietary corporation formed in 1964, is the owner in fee of two adjoining parcels of real property located in Mamaroneck, New York [the "Foundation Properties"]. The Foundation is, in turn, a wholly-owned subsidiary of Continued Care Facilities, Inc. ["CCF"], a corporation engaged in the development of health care facilities in the southwestern United States. Located on the Foundation Properties are the Sarah R. Neuman Nursing Home [the "Nursing Home"] and the Sarah R. Neuman Pavilion [the "Pavilion"]. Pursuant to two net leases (the first in 1968 with respect to the Nursing Home and the second in 1973 with respect to the Pavilion) [the "Leases"], the Foundation leased the Properties to Neuman.

In 1975, the Leases were amended to reflect a shortening of the lease period. In 1983, the Leases were again amended to reflect an increase in annual rental payments of approximately $140,000. On July 11, 1984, exactly five months prior to his Chapter 11 filing, Neuman, acting in his capacity as President of the Foundation, took out a second mortgage of $2.1 million on the Nursing Home. There is little genuine dispute that the proceeds from the second mortgage were used by CCF in the development of a health care facility in Amarillo, Texas. In August 1984, the Leases were amended once again, this time to reflect an increase in annual rental payments of $300,000. Neuman claims that he received a loan of $917,000 from CCF as consideration for the 1984 amendments. Thus far, however, he has not produced any documentation for the purported loan transaction.

In September 1984, Neuman entered into a contract for the sale of the Nursing Home and Pavilion businesses to Edward Leffler, one of Neuman's business associates. Leffler was assigned the Leases as Neuman's contract vendee. The sale agreement provided that the assignment of

the Leases would be rescinded if necessary New York State regulatory approval was not obtained by September 30, 1986. When the requisite regulatory approval was not obtained by that date, the Leases reverted to the Trustee, Neuman having filed for bankruptcy in December 1984 and the Trustee having been appointed in March 1986.

The Trustee paid monthly rent of $111,916.76 in both October and November 1986, as required under the amended 1984 Leases. On November 25, 1986, however, the Trustee wrote to the Foundation stating that rental payments under the 1984 Leases were too high, and that, commencing in December, the estate would no longer pay the full rental due. On December 11, the Trustee tendered a check for $84,058, in satisfaction of December's rent. The check was returned by the Foundation, which insisted on full payment.

On December 24, 1986, the Trustee commenced an adversary proceeding seeking an order fixing a fair and reasonable monthly rental for the Foundation Properties.[1] On December 29, 1986, the Foundation commenced this adversary proceeding against the Trustee, seeking to compel (1) surrender of the Foundation Properties, or (2) pending surrender, full performance of the Debtor's obligations under the amended 1984 Leases. The Trustee opposed the motion to compel and moved for summary judgment dismissing all of the Foundation's claims. The Trustee argued that the amended 1984 Leases were not *bona fide*, and thus, unenforceable against the estate under the Bankruptcy Code.

On January 29, 1987, Bankruptcy Judge Abram held a hearing with respect to the Foundation's motion to compel payment of rent. The Foundation argued that, because the Trustee had failed to assume or reject the Leases within 60 days of the order for relief, as required by section 365 of the Bankruptcy Code, the Foundation was entitled to the immediate surrender of the

Properties, or, in the alternative, to full performance under the 1984 Leases pending such surrender. The Foundation further argued that, without full payment under the 1984 Leases, it stood to suffer irreparable injury because (1) the Nursing Home and the Pavilion located on the Properties were the Foundation's sole income-producing assets, and (2) the Foundation was faced with imminent default on its mortgages if it did not receive the rental payments. On February 27, 1987, Judge Abram ordered the Trustee to make monthly rental payments of $110,663. The Order was entered on March 3, 1987.

After the Trustee discovered that the Foundation had received approximately $1,025,000 in tax refunds over the previous months, he moved to have the March 3 Order amended. A hearing was held on March 30, at which the Trustee argued that the proceeds from the tax refunds could have been used to service the mortgages. The Foundation argued that it had used nearly half of the funds to pay attorneys' fees and was entitled to offset debts owed by Neuman to the Foundation against the remaining amount. The Trustee also disclosed that the Foundation was owed approximately $2.5 million from CCF, its parent.

Following the March 30 hearing, Judge Abram reduced the monthly rental payment to $103,000, an amount sufficient to cover the Foundation's mortgage payments. Judge Abram's Order, entered April 22, 1987, required "rent" payments "on an interim basis and to prevent any default on mortgages on the Nursing Home and Pavilion properties pending further order of this court or final determination of this adversary proceeding." [the "April 22 Order"]. In a memorandum accompanying the April 22 Order, Judge Abram stated that "[w]hether the payments are rent or use and occupation or something else need not be resolved at this time." The Government appeals.[2] To

---

1. The status of the Trustee's adversary proceeding is unclear. However, given the nature of this appeal, it would appear that the issues raised in both the Trustee's and the Foundation's adversary proceedings are inextricably linked.

2. The Trustee failed to file a separate notice of appeal, as required by Bankruptcy Rule 8002.

date, Judge Abram has not rendered a decision on the Trustee's motion for summary judgment.

## DISCUSSION

### A. *Jurisdiction of the District Court*

■ The Court first addresses the issue of whether it has jurisdiction to hear an appeal from the April 22 Order. The Government relies on 28 U.S.C. § 158, which provides:

(a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

28 U.S.C. § 158(a).

The Government contends that the Court has jurisdiction pursuant to 28 U.S.C. § 158 because the April 22 Order essentially grants the Foundation the relief sought in its surrender proceeding and is, "in substance, a temporary mandatory injunction." The Government argues, at great length, that Judge Abram abused her discretion by granting the injunction (1) without making the requisite finding that, absent the relief, the Foundation stood to suffer irreparable injury, and (2) without identifying or adopting any legal basis for the relief. The Foundation argues that the Court is without jurisdiction to hear this appeal because the April 22 Order is not an injunction, but rather, is an interlocutory order granting interim relief. The Foundation further argues that the April 22 Order is mandated by § 365 of the Bankruptcy Code and fully justified as an exercise of the Bankruptcy Court's inherent equitable power to preserve property of the estate.

The April 22 Order is clearly not "final" in the ordinary sense envisioned by § 158(a). For an order to be final, "it must ... resolve[ ] and terminate[ ] some aspect of the proceedings and irrevocably decide[ ] the rights of any party or a dispositive issue of law." *In re Chateaugay Corp.*, 64 B.R. 990, 996 (S.D.N.Y.1986); *see In re Stable Mews Associates*, 778 F.2d 121, 122 (2d Cir.1985) (whatever flexibility exists with respect to "finality" in bankruptcy proceedings "is limited by the requirement that there be a final decision on the discrete issue at bar"); *id.* at 123 n. 3 ("Interim awards are, by definition, not final.").

Instead, the April 22 Order appears to be a type of hybrid, involving the Bankruptcy Court's application of § 365(d)(4) of the Code, its exercise of equitable discretion in granting interim relief, and its interest in preserving property of the estate. In light of the nature of the April 22 Order and the relief afforded thereunder, the issue before the Court is whether the Order may appropriately be classified as an injunction for purposes of this appeal.

---

Instead, the Trustee filed his own brief seeking reversal of the April 22 Order one day prior to the day on which the Foundation's opposition brief was due. The Trustee's brief argues that Judge Abram ignored the evidence proffered by him that the 1983 and 1984 Leases were sham, or, at most, financing arrangements between the Foundation and the Debtor.

The Foundation now moves to strike the Trustee's brief. The Government has submitted a letter in support of the Trustee, and cites cases which essentially state than an appeal on behalf of one defendant in an action may operate on behalf of other, nonappealing defendants. *See, e.g., Kicklighter v. Nails by Jannee, Inc.*, 616 F.2d 734, 742 (5th Cir.1980); *In re Barnett*, 124 F.2d 1005, 1009 (2d Cir.1942). However, the Court agrees with the Foundation that the filing of a notice of appeal is a jurisdictional prerequisite to an appeal. *See Smith v. Dairymen, Inc.*, 790 F.2d 1107, 1109–11, 1111 (4th Cir.1986) ("[A]bsent exceptional circumstances ..., only a party who files a notice of appeal properly invokes the appellate jurisdiction of the district court, and we so hold."); *In re Abdallah*, 778 F.2d 75, 77 (1st Cir.1985). No exceptional circumstances exist, or have been alleged, which might justify relieving the Trustee of the clear obligation to file a notice of appeal before proceeding to submit a brief in support of reversal of the Bankruptcy Court's order, especially one day prior to the day on which the Foundation's opposition brief was due. Accordingly, the Foundation's motion to strike the Trustee's brief is granted.

## B. *Classification of the April 22 Order*

The Foundation contends that classifying the April 22 Order as an injunction is a mischaracterization of the record because (1) injunction issues were not raised before Judge Abram, and (2) the Foundation sought the order compelling payment of rent pursuant to § 365(d)(4) of the Bankruptcy Code. The Government counters that Judge Abram offered no legal basis for issuing the Order and § 365 was not mentioned in either the Order itself or in the accompanying memorandum. Neither of these arguments are entirely accurate.

First, a review of the transcripts of the January 29 and March 30 hearings indicates clearly that Judge Abram was proceeding under § 365. *See* Record of Appeal ["A."] at 221, 226, 683, 685, 705, 709. The Trustee did not assume or reject the 1984 Leases within the 60–day statutory period provided for in § 365(d)(4). Accordingly, pursuant to that section, the 1984 Leases were deemed rejected and the Trustee was obligated to surrender the Foundation Properties.[3] Section 365(d)(4) formed the basis upon which the Foundation commenced its adversary proceeding.

Because the Trustee chose not to surrender the Properties, the Foundation argued that it was entitled to an order compelling payment of rent pending the Trustee's surrender. Of course, the Trustee claims that the 1984 Leases are not *bona fide*, and, therefore, unenforceable against the estate. This is the very issue currently being litigated before the Bankruptcy Court by virtue of the Trustee's motion for summary judgment, which seeks to dismiss the Foundation's claims under the 1984 Leases. In one sense, therefore, Judge Abram granted the very relief sought by the Foundation in its adversary proceeding, *i.e.*, payment of rent under the Leases pursuant to § 365(d)(4) of the Code.

Second, the Foundation's argument that injunction issues were never raised is also not entirely accurate. In its original moving papers seeking to compel payment under the 1984 Leases, the Foundation relied, in part, upon the affidavit of James Rudden, the Foundation's treasurer, to argue that "[r]equiring the continued payment of rent in this case is not only mandated by the Code, it is also compelled by business exigencies.... [T]he Trustee's failure to perform all of the obligations under the Leases means that the Foundation is confronted with imminent default on its existing mortgages." Brief of Appellee, Exh. A at 16, 87 Civ. 3434 (JMC) (S.D.N.Y. June 26, 1987); *id.* at 17 ("[A]bsent [rental payments], the Foundation is confronted with imminent default on its existing mortgages."); *see also* A. at 25–26 (Affidavit of James Rudden ¶¶ 23–25, submitted in support of Foundation's motion to compel payment of rent under the Leases pending surrender of the Property); A. at 219–20 (transcript of January 29 hearing, where counsel for the Foundation stated that the "issue of irreparable injury" raised in Rud-

---

**3.** Section 365(d)(3) of the Code provides, in pertinent part:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3).

> Section 365(d)(4) provides as follows:
> Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period fixes, then such lease is deemed rejected, and the trustee

shall immediately surrender such nonresidential real property to the lessor.

11 U.S.C. § 365(d)(4).

Section 365(d)(4) has been construed strictly. *See In re BSL Operating Corp.*, 57 B.R. 945, 951 (Bankr.S.D.N.Y.1986) ("While compliance with the mandate of Section 365(d)(4) requires alacrity, it is not a difficult requirement to meet. The statute is demanding, but clear."); *In re Longua*, 58 B.R. 503, 505 (Bankr.W.D.Wis.1986) ("The new paragraphs impose a strict and inflexible requirement of timely performance upon the trustee."). There is little dispute that the Trustee failed either to assume or reject the Leases, and that the last date upon which he might have done so was December 1, 1986, 60 days after the Leases reverted to Neuman following the failure to obtain regulatory approval for the sale of the Nursing Home and Pavilion businesses to Edward Leffler.

den affidavit remained viable, despite argument that Foundation was proceeding under § 365 of the Code).

Lastly, Judge Abram seems to have granted the relief sought by the Foundation for the purpose of preserving property of the estate. The Trustee acknowledges that the Nursing Home and Pavilion businesses are the estate's principal assets. Thus, it was Judge Abram's view that, insofar as the Trustee was concerned, it was not in the interest of the estate for the Foundation to default on the mortgages encumbering the Foundation Properties, *see* A. at 221, and she therefore ordered that the payment of rent be used solely to service the mortgages. Indeed, the April 22 Order requires that the rental payments be used solely for that purpose. A. at 713. Judge Abram also stated that she was "not prepared to require the trustee to make payments that are not required for immediate remission to a third party." A. at 706.

In its reply papers, the Government cites the case of *In re Feit & Drexler, Inc.,* 760 F.2d 406 (2d Cir.1985) in support of its argument that the April 22 Order qualifies as an injunction. In *Feit,* the Court of Appeals considered whether an order restraining a litigant in an adversary proceeding from transferring or disposing of her property, and compelling her to turn over certain property to her attorney as escrow agent, pending adjudication of the claims against her, was an appealable interlocutory order.

In first determining whether the lower court's [4] order could be characterized as an injunction, the court focused on the nature of the relief granted. The court noted that 28 U.S.C. § 1292(a)(1), which grants the court of appeals jurisdiction to review "[i]nterlocutory orders ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions," had been "[a]dopted by Congress 'to permit litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence.'" 760 F.2d at 411 (citing *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955)). This "statutory exception to the final-judgment rule has generally been narrowly construed," *id.* (citing cases), and "is limited 'to injunctions which give or aid in giving some or all of the substantive relief sought by a complaint.'" *Id.* at 411–12 (quoting *Miller v. United States,* 403 F.2d 77, 78 (2d Cir.1968) (Friendly, J.) (quoting *International Products Corp. v. Koons,* 325 F.2d 403, 406 (2d Cir.1963) (Friendly, J.))). An appealable interlocutory order must "'touch on the merits of the claim'" *Id.* at 412 (quoting *Switzerland Cheese Association, Inc. v. E. Horne's Market, Inc.,* 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966)). Lastly, the appealing party must show that the order appealed from "'might cause them irreparable consequences if not immediately reviewed.'" *Id.* (quoting *Carson v. American Brands, Inc.,* 450 U.S. 79, 85, 101 S.Ct. 993, 997, 67 L.Ed.2d 59 (1981)).

The Government argues that all three prongs of the *Feit* test are met.[5] The Court agrees. First, it is clear that the April 22 Order "give[s] or aid[s] in giving some or all of the substantive relief sought by [the Foundation's] complaint." *Id.* at 411–12 (citations omitted). The Foundation brought the adversary proceeding pursuant to § 365(d)(4) of the Code, seeking the immediate surrender of the Foundation Properties. Pending such surrender, the Foundation sought the continued payment of full rent under the 1984 Leases. This relief was initially granted by Judge Abram in her March 3 Order and later adjusted to an amount necessary to service the mortgages on the Foundation Properties.

---

**4.** The order had been issued by the district court, sitting as a bankruptcy court.

**5.** The Government contends that interlocutory bankruptcy court orders are appealable "where appeal would lie from an analogous District Court order under 28 U.S.C. § 1292(a)(1)." Reply Brief of United States at 4, 87 Civ. 3434

(JMC) (S.D.N.Y. July 6, 1987) (citing *In re 48th Street Steakhouse, Inc.,* 46 B.R. 227, 229 (S.D.N.Y.1985); *In re Carl Neuman,* No. M–47 (S.D.N.Y. July 12, 1985) (Sprizzo, J.) (unreported oral decision); *In re Electronic Theater Restaurants,* 53 B.R. 458, 460–61 (N.D. Ohio 1985)).

Second, the Foundation's right to compel payment of rent under the 1984 Leases is derived from § 365(d)(4), which requires immediate surrender of a leased property if the trustee neither assumes nor rejects the lease within the statutory period, such inaction being deemed a rejection of the lease. Thus, the April 22 Order touches the merits of the Foundation's claims by granting, on an interim basis, the very relief it sought in the adversary proceeding, despite the pendency of the proceeding and the Trustee's unresolved motion for summary judgment. Lastly, Judge Abram herself noted that the effects of the April 22 Order may be irreversible in that, should the Trustee ultimately prevail on its defense that the estate has no obligation under the 1984 Leases because they are not *bona fide*, the estate may be unable to recover any of the monies overpaid. A. at 681.

The April 22 Order grants the Foundation, albeit on an interim basis, the very relief sought pursuant to § 365 of the Code, pending the Trustee's surrender of the Properties. Judge Abram clearly proceeded under this section in mandating payment, but also gave consideration to preventing imminent default on the mortgages, thus preserving property of the estate. Lastly, the April 22 Order might cause irreparable consequences if the Trustee ultimately prevails on his motion for summary judgment and attempts to recover monies overpaid to the Foundation. For the foregoing reasons, the Court concludes that the April 22 Order may properly be classified as an injunction, from which an appeal may be taken.

## C. *Standards for Preliminary Injunctive Relief*

It is well established that, in order to obtain a preliminary injunction, an applicant must show that he

is likely to suffer irreparable injury if [such] relief is denied [and that] there is either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the [applicant's] favor.

*Proctor & Gamble Co. v. Chesebrough-Pond's Inc.*, 747 F.2d 114, 118 (2d Cir.1984); accord *In re Feit*, 760 F.2d at 415–16; *Coca–Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 314–15 (2d Cir.1982); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam).

### 1. *Irreparable Injury*

As discussed above, the Foundation denies that it sought, or obtained injunctive relief, insisting that the April 22 Order represents interim relief pending a final adjudication of the adversary proceeding brought by it to compel either surrender of the Foundation Properties, or full compliance by the Trustee with the terms of the 1984 Leases. However, as noted above, the Foundation's initial motion papers and the record of the January 29 hearing make clear that, in seeking the March 3 Order, later superseded by the April 22 Order, the Foundation relied, at least in part, upon arguments that it would suffer irreparable injury if it was denied interim relief on the rental payments because the Properties were its sole income-producing assets and default was imminent without receipt of the payments.

By the March 30 hearing, however, serious questions had arisen about the Foundation's claim that the Properties were its sole source of income. The Trustee produced evidence that the Foundation had received over $1 million in tax refunds, at least some of which could have been used to service the mortgages. In addition, it was revealed that CCF, the Foundation's parent, owed Foundation approximately $2.5 million. Judge Abram expressed her concerns about the newly revealed information and adjusted the rental payments to an amount sufficient to cover the Foundation's monthly mortgage payments. However, although Judge Abram appears primarily to have been concerned with avoiding a default on the mortgages, which would have jeopardized the Nursing Home and Pavilion businesses to the detriment of the estate, she made no specific finding that the Foundation could not make the

mortgage payments without the rental payments. Judge Abram was apparently persuaded that the Foundation was either unable or unwilling to make the mortgage payments in the absence of the rental payments and commented that, without the Order, "the trustee almost certainly would in some way have to make sure that those mortgage payments were paid in order ... to prevent the foreclosure." A. at 705.

As a general rule, "a party may not obtain injunctive relief where it is claiming a loss that can be adequately remedied by an award of money damages." *Feit,* 760 F.2d at 416; *see Sperry International Trade, Inc. v. Government of Israel,* 670 F.2d 8, 12 (2d Cir.1982); *KMW International v. Chase Manhattan Bank, N.A.,* 606 F.2d 10, 14 (2d Cir.1979). In exceptional circumstances, such as where an application shows that the potential loss may force him into bankruptcy, irreparable injury may be present. *See Sperry International, Inc.,* 670 F.2d at 12.

The Foundation's claim that it faced imminent default on the mortgages without the rental payments is akin to a party claiming irreparable injury if payment of an alleged obligation is not compelled. Under ordinary circumstances, the party would be forced to bear the loss pending adjudication of its claims and, if successful, could seek to recover monetary damages. Although the Foundation's claim might support the "exceptional circumstances" exception to the general rule discussed above, no express finding that such circumstances existed was made by Judge Abram. For this reason, by ordering payment of rent in an amount sufficient to cover the Foundation's mortgage payments, without rendering a decision as to the correct amount of rent due under the Leases, Judge Abram exceeded her discretion.

### 2. *The Merits of Foundation's Claims*

█ The Government contends that, even with respect to the merits of the Foundation's basic position, Judge Abram failed to specify any legal basis upon which the Foundation was entitled to an order compelling payment of rent under the 1984 Leases. To a large extent, this argument has been addressed above. In the Court's view, insofar as the April 22 Order merely compels payment of post-rejection rent pending surrender of the Leases, the Government's argument is without substantial merit. There is no dispute that the Trustee failed to assume or reject the Leases within the 60–day statutory period. Thus, pursuant to § 365(d)(4), the Leases were deemed rejected and the Trustee was obligated to immediately surrender the Properties to the Foundation. It is true that the case of *In re PCH Associates,* 804 F.2d 193 (2d Cir.1986), stands for the proposition that a non-residential lease which is merely a financing device, or otherwise not a *bona fide* lease, is unenforceable under § 365. However, assuming a valid lease, there is legal authority for the proposition that a trustee who remains in possession of property subsequent to his rejection of the lease, must continue to pay the full rent reserved, pending surrender of the property. *See, e.g., In re Longua,* 58 B.R. 503, 506 (Bankr.W.D.Wis.1986) (requiring full rental payment under lease from trustee who remained in possession of property following rejection).

Although on this appeal, the Government apparently takes the position that the Leases are unenforceable in their entirety, in his motion for summary judgment, still pending before Judge Abram, the Trustee attacks only the 1983 and 1984 amendments. Significantly, only weeks prior to the commencement of the Foundation's surrender proceeding, the Trustee offered to pay $84,058 per month under the Leases, and soon thereafter brought an adversary proceeding to fix a fair and reasonable rent.

It would appear, therefore, that even the Trustee recognizes that he is obligated to pay some amount of rent so long as he continues to occupy the Properties. However, there is no justifiable basis for fixing that rent at $103,000 per month, when the appropriate amount required under the Leases remains to be determined. The downward adjustment in the rent is perhaps indicative of Judge Abram's own doubts as to whether the 1983 and 1984

amendments to the Leases are valid. Indeed, on more than one occasion, Judge Abram expressed the view that the amendments might be found to be invalid for lack of consideration or other reason and that any monies overpaid by the Trustee as "rent" might be irretrievably lost to finance other CCF facilities. A. at 681, 691. She also made clear her position that monies paid pursuant to the April 22 Order were to go directly to make the Foundation's mortgage payments. A. at 678, 706. Yet, when Judge Abram inquired as to whether the Foundation was prepared to put up any security in the event the Trustee prevailed in the litigation, the Foundation could offer nothing. A. at 690. Despite these concerns, Judge Abram granted the interim relief requested. Accordingly, although there was a valid basis for ordering the Trustee to pay rent so long as he occupied the Properties, it was inappropriate to order nearly full payment under the 1984 Leases when the question of the correct amount of rent due had been placed squarely at issue by the Trustee's motion for summary judgment, and remained to be resolved by the Bankruptcy Court in the context of a final adjudication of the Foundation's surrender proceeding.

Bankruptcy Rule 8013 provides that, on appeal, the district court "may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." For all of the foregoing reasons, this matter is remanded for further proceedings designed to fix the fair and reasonable rental due the Foundation under the Leases. Prior to compelling additional payments under the Leases, the Bankruptcy Court should render factual determinations as to the validity of the various amendments being challenged by the Trustee. Pending a determination as to the fair and reasonable rental due the Foundation, the April 22 Order is stayed.

### CONCLUSION

The April 22, 1987 Order of Bankruptcy Judge Prudence B. Abram is stayed. The matter is remanded for the purpose of determining a fair and reasonable rental under the Leases between the Foundation and the Trustee.

SO ORDERED.