In re Carl H. NEUMAN, Debtor.

Bankruptcy No. 84 B 11704 (PBA).

United States Bankruptcy Court,
S.D. New York.

Oct. 25, 1988.

Emmet, Marvin & Martin, New York City by Edward P. Zujkowski, for The Bank of New York.

Garrity, Connolly, Lewis, Lowry, Grimes & Silverman, New York City by James Garrity, for the Chapter 11 Trustee.

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., New York City by Nancy Kilson, for U.S.

Katz, Kleinbaum, Farber & Karson, White Plains, N.Y. by Eugene I. Farber, for Sarah Neuman Foundation.

PRUDENCE B. ABRAM, Bankruptcy Judge.

By motion dated June 9, 1988, The Bank of New York ("BNY") sought an order vacating the automatic stay with respect to foreclosure against the Debtor's leasehold tenancy interest in the health care facilities known as The Sarah R. Neuman Nursing Home and The Sarah R. Neuman Pavilion located at 845 Palmer Avenue, Mamaroneck, New York (collectively, the "Home"). The automatic stay has been continued in effect pending this court's determination of the motion. The Chapter 11 Trustee, James Garrity, has opposed BNY's motion. In addition, the BNY motion has been opposed by United States of America, a substantial creditor of the Debtor, and by Sarah Neuman Foundation ("Foundation"), the landlord of the Home. Resolution of this motion was delayed as settlement discussions were underway but they have been unsuccessful to date.

Most of the salient facts are set forth in the decision of the District Court on the amount of rent to be paid by the Trustee to Foundation as landlord and familiarity with that decision is presumed. See *In re Neuman*, 81 B.R. 796 (D.C.S.D.N.Y.1988). Since the District Court's decision, the Trustee has paid no rent to Foundation for the Home and this court has not refixed nor been requested to refix the rent to be paid by the Trustee.

BNY has three mortgages on the Home and the real property on which it sits. The two first mortgages are for $854,460.37 plus interest and $2,451,562.21 plus interest and were executed in December 1973 and July 1974, respectively. The third mortgage held by BNY is in the principal amount of $1,365,000 and is dated June 11,

1984.[1] The payments on the three BNY mortgages are the obligation of the landlord, Foundation, and not that of the Debtor. BNY alleges in its motion that Foundation is $400,000 in arrears in mortgage payments, apparently not having made payments since the issuance of the District Court's decision on January 22, 1988.

In pending adversary proceedings the Trustee has challenged the validity of the leases between the Debtor and Foundation for the Home. In particular, the Trustee challenges the validity of 1983 and 1984 amendments to the leases which significantly increased the lease rental payments and shortened the lease term. The Trustee has also challenged the validity of BNY's third mortgage.

BNY seeks an order of this court authorizing it to proceed with a foreclosure against Foundation, a non-debtor. In addition, BNY seeks a vacation of the stay with respect to foreclosure against the leasehold interest of the Debtor in the Home.[2]

Both aspects of BNY's motion are denied.

## DISCUSSION

■ BNY's motion with respect to Foundation is denied because no permission is required from this court in order for BNY to be free to commence a foreclosure against Foundation. Foundation's response to BNY's motion states that it would be unfair for this court to let BNY foreclose because its default on the mortgages is due to the Trustee's nonpayment of rent. Both the United States and the Trustee assert that Foundation has assets from which it could have paid the BNY mortgages if it wanted to even though the Trustee has paid no rent since the District Court's ruling.

The United States and the Trustee appear to assume that a foreclosure proceeding against Foundation which did not name

the Trustee would terminate the estate's tenancy rights and render the pending adversary proceedings pointless.[3] No explanation is provided, however, of the legal route by which such a result could occur. It is this court's understanding of mortgage foreclosure principles, as well as due process, that the Debtor (or the Trustee) must be a named party to the foreclosure action in order for foreclosure to affect the estate's tenancy rights. The authority cited by BNY is not to the contrary as it is plain the tenant had been named as a party in the foreclosure. See *220 West 42 Associates v. Ronbet Newmark Co.,* 84 Misc.2d 259, 375 N.Y.S.2d 255 (1975), *modified,* 53 A.D.2d 829, 385 N.Y.S.2d 304 (1st Dept.), *aff'd,* 40 N.Y.2d 1000, 391 N.Y.S.2d 107, 359 N.E.2d 701 (1976). Thus this court concludes that a foreclosure action by BNY in which the Trustee is not named as a party will not affect the estate and no permission is required from this court before it can be commenced.

The present procedural context is insufficient to warrant affirmative relief for Foundation in the form of an injunction against foreclosure against it. Foundation is, of course, free to raise any equities in its favor in the State Court if BNY commences a foreclosure action against it.

■ The court must still address that aspect of BNY's motion which seeks to lift the automatic stay for the purpose of joining the Trustee in a foreclosure action so as to be able to terminate the estate's leasehold tenancy in the Home. This court rates the Trustee's prospects in the litigation on BNY's third mortgage as good since that mortgage came into existence only six months before the Chapter 11 filing at a time when the Debtor appears to have been insolvent and no valuable consideration flowed to the Debtor individually, as distinguished from Foundation. Moreover, there is evidence that BNY required the lease restructuring so that Foundation

---

**1.** This Chapter 11 case was commenced by the filing of a voluntary petition six months later in December 1984.

**2.** BNY may quarrel with this court's characterization of the relief it seeks.

**3.** This assumption may also be shared by BNY since foreclosure against Foundation is of interest in this case only if it affects this estate's interests.

would have sufficient monies to pay the third mortgage. Thus, the validity of the third mortgage insofar as it affects the estate's leasehold is in genuine dispute. Although the Trustee has raised some claims that might affect the validity of the two first mortgages, this court rates the Trustee's prospects of success on these claims as modest as these mortgages were placed on the property ten years before the Chapter 11 at the time when the Debtor does not appear to have been insolvent. To the extent any finding on adequate protection is required, this court is satisfied that no adequate protection is required from this estate since the estate is not the mortgagor and because the value of Foundation's interest in the Home, even assuming the 1983 and 1984 lease amendments are invalidated, significantly exceeds the amounts due on these two mortgages. A value of $10 million has been suggested for the Home on a free and clear basis. Although the pending litigation between Foundation and the Trustee over the validity of the various leases for the Home may affect the value of Foundation's interest, it is entirely undisputed that the value of Foundation's interest in the Home exceeds the amount due to BNY on the two first mortgages.

A serious question exists whether BNY is even a party in interest to request lifting of the stay to name the Trustee in the foreclosure. In *In re Comcoach Corp.*, 698 F.2d 571 (2d Cir.1983), the Second Circuit held that a bank holding a mortgage on premises leased by a debtor lacked standing to seek relief from the automatic stay for the purpose of foreclosing upon the debtor's leasehold interest because the bank is not a creditor of the debtor with respect to its mortgage.[4]

This court finds it unnecessary to determine whether because of the pending challenge to BNY's third mortgage as a fraudulent conveyance BNY's motion is precluded by Code § 502(d).

The motion of BNY be and it hereby is denied.

It is so ordered.

---

**4.** This court questions application of *Comcoach* to a situation in which the Debtor's Trustee has challenged the validity of the mortgage sought to be foreclosed. If the third mortgage affects the estate sufficiently for the Trustee to challenge it, it would appear that symmetry should permit the holder of the mortgage party in interest status.