■ G. B. Seely's Son, Inc., Appellant, v Fulton-Edison, Inc., et al., Respondents, et al., Defendants.—In an action to foreclose a consolidated mortgage on real property, plaintiff appeals from so much of an order of the Supreme Court, Westchester County, dated July 2, 1975, as (1) denied the branch of its motion which sought to dismiss the first and second affirmative defenses and counterclaims contained in respondents' answer and (2) directed plaintiff to join Norton Simon, Inc., and "John Doe, tenant in possession", as parties defendant. Order modified by striking the first decretal paragraph thereof and substituting therefor the following: "Ordered that the plaintiff's motion is granted to the extent of striking the second and third affirmative defenses and counterclaims, and the motion is otherwise denied." As so modified, order affirmed insofar as appealed from, with $50 costs and disbursements to respondents. The time of plaintiff to join Norton Simon, Inc., and "John Doe, tenant in possession", as parties defendant in this action is extended to 30 days from the date of service of a copy of the order to be entered hereon with notice of entry thereof. In 1949 the defendant landlord, Fulton-Edison, Inc., entered into a lease with Canada Dry Ginger Ale, Incorporated. Norton Simon, Inc. (Norton Simon) is the corporate successor of Canada Dry Ginger Ale, Incorporated and, therefore, is the successor lessee. Norton Simon subleased the premises to its subsidiary, Canada Dry Corporation, the sole tenant of the premises. Paragraph 6 of the 1949 lease provides that the lease shall be subordinate to any first mortgage in a principal amount not exceeding $600,000 which may, at the time of execution of the lease, or thereafter, be placed against the property. The lease also contains provisions to the effect that, if a foreclosure is threatened, the tenant may pay the amounts due under the mortgage and credit said payments against the rent. Thus, paragraph 6 provides in pertinent part: "If an action be commenced to foreclose any such mortgage by reason of the landlord's default in payment of any installment of interest or principal due thereon or by reason of the landlord's default in payments of any taxes, assessments or other charges which the landlord is required to pay, including, but not limited to, insurance premiums, in which foreclosure action the tenant's leasehold interests in the premises are sought to be foreclosed, the tenant may, if the tenant so elects, pay directly to the mortgagee the amount of such interest or principal installments, taxes, assessments and any other charges whatsoever that may be necessary to restore the mortgage to good standing and effect a discontinuance of the foreclosure action and the amounts so paid by the tenant shall be credited against any rent payable by the tenant under this lease whether or not such rent be then due and payable or payable in the future." Under the terms of the lease, Fulton-Edison, Inc., the lessor and owner of record of the premises, agreed to, and did, construct a commercial building for the use of the lessee for an initial term of 20 years at an annual rental of $58,400. The lease term was to commence upon completion of the building and the lessee was given an option to renew for an additional 20 years upon the same rental terms and conditions. (The option to renew was exercised and the

lease term was therefore extended to 1989.) In January, 1949 Fulton-Edison, Inc., executed a first mortgage on the premises and, on or about July 30, 1952, it executed and delivered a further mortgage. The said mortgages were then consolidated as a first mortgage to the Emigrant Industrial Savings Bank in the principal amount of $525,000. Thereafter, by virtue of extension agreements, the mortgage term was extended to July 1, 1974 and the unpaid principal was to become then due and payable. In May, 1974 Emigrant agreed to a further extension until August 31, 1974 in order to afford respondents additional time to arrange refinancing. Thereafter, Emigrant granted further extensions for the same purpose. In late 1974, during these extension periods, Norton Simon, faced with loss of the leasehold should there be foreclosure, offered to purchase the mortgage from Emigrant at par, plus accrued interest. Emigrant advised the respondents that, before it would accept the tenant's offer, it would give them the opportunity to purchase the mortgage on the same terms. The respondents did not take up Emigrant's offer. On December 3, 1974 Emigrant assigned the mortgage to plaintiff upon payment of the principal and accrued interest then due thereon ($126,217.49). In this manner, plaintiff (a corporation organized and existing, since 1912, under the laws of New York State and "a wholly owned subsidiary of a wholly owned subsidiary of Norton Simon, Inc.") became the holder of the consolidated first mortgage on the premises. On December 12, 1974 plaintiff commenced this action to foreclose the mortgage, but failed to name the successor lessee, Norton Simon, or its tenant, Canada Dry Corporation, as defendants. Special Term noted that "therefore, as of the commencement of plaintiff's foreclosure action on December 12, 1974, it would appear [by virtue of the subordination clause in the lease, to mortgages not over $600,000] that NSI's lease was subordinated to plaintiff's mortgage" and that the apparent subordination of the lease to the mortgage brings into play section 1311 of the Real Property Actions and Proceedings Law which provides, in pertinent part: "Each of the following persons, whose interest is claimed to be subject and subordinate to the plaintiff's lien, shall be made a party defendant to the action: 1. Every person having an estate or interest in possession, or otherwise, in the property as tenant in fee, for life, by the curtesy or for years, and every person entitled to the reversion, remainder, or inheritance of the real property, or of any interest therein or undivided share thereof, after the determination of a particular estate therein. * * * 3. Every person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff." As has been noted, the lease, by its terms, was made subordinate to any first mortgage in a principal amount not exceeding $600,000 which might, after the time of the execution of the lease, be placed against the property. At bar, of course, the consolidated mortgage being foreclosed was such a mortgage. Thus, the lease terms and section 1311 of the Real Property Actions and Proceedings Law would appear to require that Norton Simon and Canada Dry be named as party defendants and that the lease be thus subject to foreclosure. On or about January 9, 1975 plaintiff and Norton Simon entered into a subordination agreement, dated as of December 5, 1974. That agreement provides, in pertinent part: "Lessee has requested Mortgagee to subordinate the Mortgage to the Lease and Mortgagee is willing to do so. NOW, THEREFORE, in consideration of the premises and other good and valuable consideration paid to Mortgagee by Lessee, the parties agree as follows: 1. Notwithstanding the terms and provisions of the Lease, the Mortgage is hereby made subject and subordinate to the Lease (as the same may hereafter be modified or amended) as of the date of this Agree-

ment." The consideration furnished by Norton Simon to plaintiff for this subordination agreement was $1,000, paid by a check dated January 14, 1975. In the belief that the price to be realized on foreclosure would be considerably greater if the property were sold free and clear of the lease than if it were sold subject to that lease, the respondents interposed an answer which included three combined affirmative defenses and counterclaims. The first defense and counterclaim alleges that Canada Dry Ginger Ale, Inc., or its successor in interest, Norton Simon (hereafter referred to collectively as Canada Dry) must be made a party defendant to the action, because its lease is subordinate to the mortgage, and that since the value of the premises, unencumbered by the lease, far exceeds the value of the premises encumbered by the lease, the owner will not be afforded complete relief in the absence of Canada Dry as a party defendant. The second defense and counterclaim alleges that Canada Dry has refused to pay the defaults under the mortgage and to then credit such payments against the rental due and that, by this scheme, Canada Dry and plaintiff are attempting to defraud the respondent mortgagor of its equity in the premises. The third affirmative defense and counterclaim is not the subject of this appeal. Plaintiff moved to dismiss the three defenses and counterclaims pursuant to CPLR 3211 (subd [a], pars 1, 7; subd [b]) on the ground that, insofar as the answer purports to set forth counterclaims, said counterclaims fail to state a cause of action and are subject to a defense based upon documentary evidence, and on the further ground that insofar as it purports to set forth defenses to this action, said defenses are not valid and have no merit. Special Term granted the motion to the extent of dismissing the third affirmative defense and counterclaim, but denied the motion insofar as it sought dismissal of the first and second affirmative defenses and counterclaims. It further ordered that "plaintiff shall, within thirty (30) days after receipt of a copy of this Order, take appropriate action to join Norton Simon, Inc. and John Doe, tenant in possession as parties defendant in this proceeding." In our opinion the second affirmative defense and counterclaim should also be dismissed. However, Special Term was correct in denying the motion insofar as it sought to dismiss the first affirmative defense and counterclaim. We find no merit to the second defense and counterclaim. Under the lease there was no obligation on the part of the lessee to pay defaults under the mortgage; there was merely an option granted to it to do so and then to credit such advances against the payment of rent. Absent a binding obligation on the lessee to pay the arrears under the mortgage, we are unable to see any inequitable conduct on its part which would serve as a defense to the action. Our opinion is different as to the first defense and counterclaim. Under section 1311 of the Real Property Actions and Proceedings Law the plaintiff in an action to foreclose a mortgage must join all parties whose interests are subordinate to that of the mortgagee. We have stated the reasons underlying that requirement in *Swackhamer, Inc. v P. F. L. Constr. Corp.* (285 App Div 841, 842): "It would seem that one of the purposes for the amendment of section 1079 of the Civil Practice Act in 1923, declaring who are necessary parties, was that a purchaser at a foreclosure sale should obtain a title freed from liens subordinate to the mortgage being foreclosed." We went on to hold that "As against the appellant, owner of the equity of redemption, the plaintiff, who sought foreclosure and sale of the mortgaged premises, could not, without notice to the owner, get a more favorable judgment than was justified by the complaint". When the instant action was begun, therefore, it was incumbent upon plaintiff to join Canada Dry as a party defendant. It would appear that

plaintiff learned that the owner was about to raise the omission as a defect in the complaint; subsequently, the agreement between Norton Simon and plaintiff was entered into, to the end that the lease might be made superior to the mortgage. We are thus cast into the question of the rights of a subrogee vis-à-vis the owner of the premises under a mortgage. A tenant whose interests are subordinated to those of a mortgagee is entitled to protect his interests by acquiring the mortgage on the leased premises upon the default of the mortgagor (see *Averill v Taylor*, 8 NY 44; *Glennon v Spencer*, 163 App Div 820). His right to redeem is derived from the owner (see *Nelson v Loder*, 132 NY 288). Once having made such payment, the tenant is subrogated to the rights of the mortgagee against the premises. That right of subrogation was described by Mr. Justice KAPPER of this court in *Bell v Greenwood* (229 App Div 550, 552–553) as follows: "The doctrine of subrogation is of equitable origin and does not rest upon any right acquired by contract but simply upon the equitable principle that substantial justice should be attained regardless of form, so that the person primarily liable should be compelled, ultimately, to pay the debt, even though it require the substitution of one creditor for another in order to accomplish this result; but this doctrine can never be invoked against one whose equities are equal or superior to those of the party seeking to be subrogated. 'Subrogation being the creature of equity it will not be permitted where it would work injustice to the rights of those having equal or superior equities.' *(Laski v. State of New York,* 217 App. Div. 420, 421, quoting from 27 Am. & Eng. Ency. of Law [2d ed.], p. 204.) 'It must not be enforced to the detriment of equal or superior equities existing in other parties.' *(Peoples v. Peoples Bros.,* 254 Fed. 489, 492.) The qualification of the right of subrogation was thus succinctly stated in *American, Surety Co. v. Citizens' Nat. Bank* (294 Fed. 609, 616): 'The right of subrogation is an equitable right, and where equities are equal the right does not exist and there can be no relief.' " For these reasons, a subrogee must itself do equity (see *Dominion Fin. Corp. v 275 Washington St. Corp.,* 64 Misc 2d 1044; *Global Realty Corp. v Kannel Corp.,* 9 Misc 2d 241). The doctrine of subrogation was formulated to dispense equity and justice among the parties (see 57 N Y Jur, Subrogation, § 4). In this case, whether Canada Dry (i.e., its successor, Norton Simon) should be made a party defendant (and its lease made subject to the rights of a purchaser on the foreclosure sale) is dependent upon the determination of the validity of the subordination agreement changing the status of the lease. Here, plaintiff and the tenant are the same person in the contemplation of the law; the tenant had previously bound itself to subordinate the lease to the mortgage. If the lease is not made subordinate, the owner of the premises will suffer because, in that event, the premises will be worth much less to a prospective purchaser at the foreclosure sale. Further, as the lease, by its very terms, is subordinate to the mortgage, the rights of the landlord thereunder could not be changed by the unilateral action of the tenant. For all of these reasons, the motion, insofar as it sought to dismiss the first affirmative defense and counterclaim, must be denied. Hopkins, Acting P. J., Martuscello, Damiani, Christ and Hawkins, JJ., concur.