In the Matter of VILLAGE RATH-
SKELLER, INC., d/b/a The
Village Gate, Debtor.

Bankruptcy No. 91–B–12914 (TLB).

United States Bankruptcy Court,
S.D. New York.

Nov. 20, 1992.

Siegel, Sommers & Schwartz, by James A. Beldner, New York City, for debtor.

Otterbourg, Steindler, Houston & Rosen, P.C., by Richard J. Rubin, Steven Soll, New York City, for Mfrs. Hanover Trust Co.

## DECISION ON MOTION SEEKING RELIEF FROM THE AUTOMATIC STAY

TINA L. BROZMAN, Bankruptcy Judge.

Village Rathskeller, Inc., d/b/a The Village Gate (hereinafter the "Village Gate"), a Bleeker Street restaurant, theatre and cabaret which has played host to countless productions, is considered by many a Greenwich Village institution. It occupies approximately 50,000 square feet of rental space located at 160 Bleeker Street (the "premises"), in the heart of the Village, and derives a great deal of its business from pedestrian traffic.

The Village Gate entered into its lease in May, 1964. Its rent, payable to its landlord, Legent Realty, is a mere $2,000/month. The lease, under which the debtor has not defaulted, runs through April 30, 2006. Even the debtor admits that the lease rate is significantly below market and that the landlord could rent the premises today for $10,000 per month (a figure which is substantially below that which the other party to this dispute proffers as market value). This below market rent for a significant remaining term would render the lease quite valuable were it not that the lease is subordinate to the lien of the mortgage and that the Village Gate has never obtained a nondisturbance agreement from the mortgagee. The relevant clause of the lease provides, in pertinent part, that:

> TENTH: This lease shall be subject and subordinate at all times, to the lien of the mortgages now on the demised premises, and to all advances made or hereafter to be made upon the security thereof, and subject and subordinate to the lien of any mortgage or mortgages which at any time may be made a lien upon the premises.

Manufacturers' Hanover Trust Co. ("MHTCo.") is a secured creditor of the landlord. As part of its loan agreement, the landlord granted MHTCo. a security interest in both the premises and its rents. When the landlord started defaulting in its payments to MHTCo., MHTCo. commenced foreclosure proceedings in Supreme Court, New York County, in March, 1990. The Village Gate was named as a necessary party defendant in that foreclosure action by virtue of its leasehold interest in the premises. A receiver was appointed.

The landlord filed for voluntary relief under Chapter 11 of the Bankruptcy Code in January, 1991. The case is pending before Judge Blackshear. Pursuant to Judge Blackshear's order, the receiver remains in place.

The Village Gate filed its own Chapter 11 petition on June 28, 1991 and has continued to manage and operate its business as a debtor-in-possession. Its case was assigned to me.

In early August, 1991, MHTCo. sought from Judge Blackshear relief from the automatic stay so that it could proceed against the landlord with its foreclosure proceedings. Later that same month, the Village Gate moved to assume its lease on the premises. The Village Gate's motion made absolutely no mention of the subordination clause in its lease, although the debtor certainly knew that MHTCo. had already commenced foreclosure proceedings in which the Village Gate was a defendant and the effect of which would be to wipe out the Village Gate's lease. In fact, MHTCo. filed opposition to the assumption raising that very issue. Notwithstanding MHTCo.'s expressed position, the Village Gate asked for nothing special in conjunction with its assumption motion, not even after MHTCo. raised its concerns. On September 30, 1991, I authorized the Village Gate to assume its lease.

Just about two months later, Judge Blackshear approved a stipulation between MHTCo. and the landlord which provided that the automatic stay would be vacated in the landlord's Chapter 11 case so as to

allow MHTCo. to proceed with the foreclosure action.

That accomplished, because the automatic stay protected the Village Gate's leasehold interest in the premises, MHTCo. asked me for relief from the stay so that it could proceed with its state court foreclosure action. MHTCo. wants to invoke the subordination clause because the Village Gate's lease encumbers at least half the building and renders it unmarketable at worst or of a very depressed value at best. The debtor challenges not only the propriety of lifting the stay, but MHTCo.'s standing to even seek that relief. Nowhere, however, is there any suggestion that MHTCo. and the landlord are in cahoots or that the landlord will be benefitted in any manner by a foreclosure, the effect of which will wipe out a lease which, from the landlord's viewpoint, may be said to be onerous.

The testimony adduced establishes that the Village Gate has significantly revamped its operations with the aid of a management consultant to eliminate unnecessary payroll, keep a tighter control on inventory, rent out its premises to producers of shows rather than produce them itself (which eliminates the risks inherent in productions), and install a new audio/video system. Whereas the debtor has operated unprofitably postpetition up through September, 1992, the losses have diminished significantly and the October figures are expected to show that the debtor has begun to operate profitably. Moreover, because one of the debtor's principals, a well-known impresario, has likely personal liability for some portion of the substantial tax debt of the Village Gate, it is anticipated that he will contribute personal funds towards the debtor's reorganization.

The debtor theorizes that, in further aid of its reorganization, it will have the subordination provision stricken and remain at the premises paying rent of $2,000 per month.

The determinative issues distill to three: (i) whether MHTCo., as a mortgagee of the debtor's landlord, has standing as a party in interest to bring this lift stay motion; (ii) whether the debtor may escape the subordination clause in the lease which it assumed either through a declaration that it is unenforceable or through an injunction in aid of confirmation prohibiting its enforcement, and (iii) whether the stay ought be lifted.

## DISCUSSION

### A. STANDING

■■■ We begin, as we must, with standing. The concept of standing subsumes a blend of constitutional requirements and prudential considerations. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Article III of the United States Constitution requires the party who invokes the court's authority to show that he suffered some actual or threatened injury as a result of the defendant's conduct, that the injury can be traced to the challenged action and that it is likely to be redressed by a favorable decision. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). An actual or threatened injury exists when a party's pecuniary interest may be affected by the outcome of a determination. *United States v. Little Joe Trawlers, Inc.*, 780 F.2d 158, 161 (1st Cir.1986). The prudential considerations have been judicially engrafted onto the Article III requirements for standing. Among these considerations are two which are of particular relevance here: (i) a party must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interest of third parties, *Valley Forge*, 454 U.S. at 474, 102 S.Ct. at 759; *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205; *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir.1991); and (ii) the plaintiff's complaint must fall within the zone of interests to be protected or regulated by the statute at issue. *Valley Forge*, 454 U.S. at 475, 102 S.Ct. at 760; *Association of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970); *In re James Wilson Associates*, 965

F.2d 160, 168 (7th Cir.1992); *Rovira v. AT & T*, 760 F.Supp. 376, 378 (S.D.N.Y.1991).

■ The statute with which we are concerned is 11 U.S.C. § 362, which automatically stays, among many other things, any act to obtain possession of property of or from the estate or to exercise control over property of the estate. 11 U.S.C. § 362(a)(3); *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 430 (2d Cir.1987); *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir.1983). It is axiomatic that a tenant's unexpired leasehold interest constitutes property of the tenant's bankruptcy estate. *In re 48th Street Steakhouse, Inc.*, 835 F.2d at 430; *In re KDT Industries, Inc.*, 32 B.R. 852, 856 (Bankr.S.D.N.Y.1983). *See also* H.R.Rep. No. 595, 95th Cong., 2d Sess. 367, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5868 ("debtor's interest in property also includes 'title' to property, which is an interest, just as are a possessory interest, or leasehold interest"). Hence, the Village Gate's unexpired lease is protected by the automatic stay.

■ Section 362(d) of the Code states that a "party in interest" may request relief from the automatic stay. However, that term, "party in interest," is not defined in the Bankruptcy Code. *In re Comcoach Corp.*, 698 F.2d at 573; *In re Johns–Manville Corp.*, 31 B.R. 965, 971 (S.D.N.Y. 1983). The Village Gate contends that MHTCo. is not such a party in interest. The Second Circuit addressed this issue in *Comcoach*, ruling that the mortgagee there lacked standing, so the crux of the Village Gate's standing argument rests on what the Circuit said.

In *Comcoach*, a mortgagee of a building in which the debtor was a tenant sought relief from the automatic stay to add the debtor as a necessary party in a state foreclosure action. The debtor had stopped paying rent. The mortgagee believed, erroneously, that the foreclosure action was stayed, which it was not, since the debtor had never been made a party to it (as a result of which foreclosure would not affect the debtor's lease). The bankruptcy judge noted that the foreclosure action was not stayed and denied relief from the stay on the grounds that the mortgagee was not a "party in interest" under section 362 entitled to seek such relief. Both the district and circuit courts affirmed.

The Second Circuit interpreted a "party in interest" to be limited to a "creditor", relying primarily on some legislative history as support for the proposition that "notwithstanding the use of the term 'party in interest,' it is only creditors who may obtain relief from the automatic stay." 698 F.2d at 573–74. The Circuit Court also cited *Greg Restaurant Equipment and Supplies, Inc. v. Tour Train Partnership (In re Tour Train Partnership )*, 15 B.R. 401 (Bankr.D.Vt.1981), which denied a judgment creditor of the debtor's creditor relief from the automatic stay so as to validate an order obtained in violation of the automatic stay attaching any distribution from the debtor to the judgment debtor. The bankruptcy judge noted that the judgment creditor was a complete stranger to the debtor, that to embroil the debtor in the state court process would interfere with the orderly administration of the debtor's estate, that the order of attachment was obtained in violation of the stay and that, in any event, the execution lien of the judgment creditor was subordinate to other liens against the judgment debtor's assets. The court concluded that the judgment creditor "is not a party in interest within the purview of section 362(d); it is in violation of the automatic stay and it is not entitled to relief on equitable principles." *Id.* at 403. What the court did not hold is that only a creditor may seek relief from the stay.

The Second Circuit's decision in *Comcoach* was driven by two facts which are not present here, first, that the mortgagee was not stayed from foreclosing because the debtor was not a party to the action and, second, that the mortgagee had an available remedy to seek payment of rent from the debtor, appointment of a receiver in the unstayed foreclosure action. The Circuit Court noted that such a receiver would have the power to seek redress for the failure to pay rents and would be considered a "party in interest" with standing

to ask for relief from the automatic stay to enforce the terms of the lease.

Writing in *Johns–Manville* not three months later, Judge Haight acknowledged the importance of the alternative remedy to the *Comcoach* decision:

> In addition, the court of appeals was apparently influenced in *Comcoach* by the fact that the bank had misapprehended its remedies in the state court foreclosure proceeding. By taking certain procedural steps, the bank was in a position to avoid any prejudice resulting from its own lack of "party in interest" status. No such ameliorating factor appears in the case at bar. CU [the movant] is presently stayed from pressing its Massachusetts action. If CU cannot seek relief from the· stay, no stratagem exists whereby another may do so for CU's benefit.

*In re Johns–Manville Corp.*, 31 B.R. at 971. Accordingly, Judge Haight ruled that the movant was a "party in interest" with standing to seek relief from the stay. He reasoned that "since if CU cannot seek relief from the stay no one can do so on its behalf, we would be reluctant to deny CU standing as a "party in interest" unless compelled by the *Comcoach* decision to do so.... we feel no such compulsion." 31 B.R. at 972.

This case stands in stark contrast to *Comcoach*, for MHTCo. has no alternative route to the relief it requests. Although a receiver has remained in place throughout the pendency of the landlord's bankruptcy case, the receiver has no standing to proceed with the foreclosure action. Only MHTCo. has that right, a right which it cannot exercise against the Village Gate because of the automatic stay. No other entity can obtain for MHTCo. what MHTCo. seeks by virtue of the subordination clause in the Village Gate's lease, namely, an extinguishment of the Village Gate's leasehold interest in the premises. Were I to adhere to a strict interpretation of *Comcoach*, I would be precluding MHTCo. from attempting to enforce a right which only it can exercise. In addition, the Village Gate has announced its intention to try to invalidate the clause of the lease which subordinates the lease to the lien of the mortgage. Under the circumstances, it is hard to see how MHTCo. could be anything other than a person aggrieved. *Cf. In re Carl H. Neuman*, 92 B.R. 598, 600 n. 4 (Bankr.S.D.N.Y.1988) (court questioning whether *Comcoach* would apply where debtor's trustee challenged the validity of the mortgage sought to be foreclosed). Significantly, at least in the context of who has standing to appeal, the Second Circuit has taken a more relaxed view of standing in bankruptcy cases, according to a mortgagee secured by the debtor's leasehold interest standing to appeal from the bankruptcy court's denial of an extension of time to assume the lease which stood as security for the mortgagee's debt. The court there noted that a person who is " 'directly and adversely affected pecuniarily by' " the challenged order of the bankruptcy judge has standing to appeal. *International Trade Administration v. Rensselaer Polytechnic Institute*, 936 F.2d 744, 747 (2d Cir.1991), quoting *In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 513 (2d Cir.), *cert. denied*, 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985).

Given that MHTCo. is stayed from completing its foreclosure action, that the Village Gate is a necessary party if MHTCo. should seek to terminate the tenancy rights, that the building is unmarketable or its value is severely depressed by the existence of the lease, that the Village Gate has expressed its intention to invalidate the subordination clause, and that no one other than MHTCo. can assert its rights, I believe that *Comcoach* does not control.

When viewed from the perspective of traditional standing analysis, it seems apparent that MHTCo. ought be permitted to seek stay relief. There can be no doubt that the automatic stay has directly affected MHTCo.; the foreclosure action has been stayed and relief from stay will redress the "injury." It is also clear that MHTCo. is asserting its own rights which may not be asserted by any other person in its stead. Finally, there is nothing in the language of section 362(d) which suggests that MHTCo. is not within the zone of

interests to be protected by the statute.[1] Accordingly, MHTCo. has standing to ask me to lift the stay. *Accord* 2 L. King, *Collier on Bankruptcy*, 362.07 at 362–60–61 (15th ed.1992); M. Bienenstock, *Bankruptcy Reorganization*, at 44, n. 89a (1989 supplement) (for ease of reference, *Bienenstock* at 44.)

## B. THE SUBORDINATION CLAUSE

 The starting point for any analysis of what the debtor's estate possesses is section 541(a), which declares that the estate comprises, among other things, all legal or equitable interests of the debtor in property as of the commencement of the case. What constitutes a property interest is defined not by the Code but by applicable nonbankruptcy law. *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). As the Supreme Court observed in *Butner,*

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323.

440 U.S. at 55, 99 S.Ct. at 918.

To the extent an interest is limited in the hands of the debtor, it is equally limited as property of the estate (except to the extent that defenses which are personal against the debtor are not effective against the estate); section 541(a)(1) is not intended to expand the debtor's rights against others beyond what rights existed at the commencement of the case. *Federal Aviation Administration v. Gull Air, Inc. (In re Gull Air, Inc.)*, 890 F.2d 1255, 1261 (1st Cir.1989); *Moody v. Amoco Oil Company*, 734 F.2d 1200, 1213 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984); 4 L. King, *Collier on Bankruptcy*, ¶ 541.06 at 541–27 (15th ed.1992).

 Leasehold interests are governed in bankruptcy by section 365 of the Code which provides, in pertinent part, that the trustee, subject to court approval, may assume or reject any executory contract or unexpired lease of the debtor. Once an executory contract or unexpired lease is assumed, the lease or contract itself, rather than the right to assume the lease or contract, is property of the estate. Just as the property comes into the estate true to its shape under nonbankruptcy law, when the executory contract or lease is assumed, it is said to be assumed *cum onere*. The defaults are cured but the agreement becomes property of the estate in the same shape as it existed prior to bankruptcy, with all of its benefits and burdens. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984). An executory contract cannot be rejected in part and assumed in part. That is, the debtor or the trustee is not free to retain the favorable features of a contract and reject the unfavorable ones. *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 304 (Bankr.S.D.N.Y.1983) (citations omitted).

 This is not to say, however, that each and every provision of the assumed agreement is enforceable against the debtor in possession; the Bankruptcy Code itself alters certain rights of the parties. *United States Lines (S.A.), Inc. v. United States (In re McLean Industries, Inc.)*, 132 B.R. 247, 265 (Bankr.S.D.N.Y. 1991); *see, e.g.,* 11 U.S.C. §§ 108(b) (extend-

---

1. Notwithstanding that the Second Circuit read a limitation into section 362(d) in *Comcoach,* the statute itself says that a "party in interest" rather than a "creditor" may seek relief from the stay. Since "creditor" is a defined term in bankruptcy, 11 U.S.C. § 101(3), used in a variety of places throughout the Code, *see, e.g.,* §§ 343; 501(a), (b) and (c); 503(b)(3); and 727(c)(1), (d) and (e) (all of which are illustrative of things which Congress has permitted creditors, but not parties in interest, to do), it would seem that Congress, had it meant to exclude from stay relief those who are not creditors, would have said so.

ing time to exercise an option for up to sixty days if it would otherwise expire less than sixty days after the commencement of the bankruptcy case), 365(e)(1) (rendering unenforceable a clause which terminates or modifies an agreement solely because of the debtor's financial condition, the commencement of a bankruptcy case or the appointment of a trustee or, prior to bankruptcy, other custodian), and 365(f)(1) (rendering unenforceable, with certain exceptions, a clause restricting assignment of the agreement). Other provisions of agreements to be assumed may be held unenforceable "when it is clear that they were designed to thwart policies underlying the Bankruptcy Code by circumventing certain of its provisions." *Bienenstock* at 459. In addition, the bankruptcy judge retains some discretion in determining that lease clauses may be refused enforcement in a bankruptcy context in which there is no substantial economic detriment to the landlord shown and where enforcement would preclude the bankruptcy estate from realizing the intrinsic value of its assets. *In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1092 (3d Cir.1990) (court reversing, however, bankruptcy court's excision of clause in shopping center lease allowing termination of lease by tenant or landlord if certain minimum sales were not realized and noting that same result might obtain even if lease were not subject to special bankruptcy provisions for shopping center leases); *In re Mr. Grocer, Inc.*, 77 B.R. 349, 354 (Bankr.D.N.H.1987).

Much of the law in this area is predicated upon the decision of the Second Circuit, written when the former Bankruptcy Act was in effect, in *Queens Boulevard Wine & Liquor Corp. v. Blum*, 503 F.2d 202 (2d Cir.1974). *In Queens Boulevard*, notwithstanding section 706 of the Bankruptcy Act which provided that "an express covenant that ... the bankruptcy of a specified party ... shall terminate the lease or give the other party an election to terminate the same shall be enforceable", the Second Circuit held that the bankruptcy court may exercise its equitable discretion to refuse to enforce such a clause where enforcement would destroy the promising possibility of reorganization for the debtor and would harm the landlord only to extent of denying it a windfall.

Although *Queens Boulevard* is strongly knitted into the fabric of the law in this Circuit, if not nationwide, the Second Circuit later emphasized that the judge must look at the totality of circumstances in order to do equity. In *In re D.H. Overmyer Co., Inc.*, 510 F.2d 329 (2d Cir.1975), the appellants argued that lease termination should not have been enforced because of the debtors' need for the premises regardless of the conduct of the chapter XI debtors toward the landlords. The Circuit Court disagreed, upholding the bankruptcy court's termination of the leases based on the debtors' conduct and the lack of any feasible plan of arrangement with any reasonable chance of success.

So we now look at the totality of circumstances. The subordination provision is neither an express or disguised bankruptcy default clause, nor an antiassignment clause. Once the Village Gate assumed the lease, without seeking any modification of its terms, pursuant to section 541 of the Code the lease as written became part of the estate (except to the extent that sections of the Bankruptcy Code altered its effect while the debtor is in bankruptcy, as discussed above.) The mortgagee, which had already moved to lift the stay in the landlord's bankruptcy at the time the assumption motion was heard, did not sit idly. It brought its interest to the forefront. But the debtor did nothing to assail the enforceability of the subordination provision and simply assumed the lease. It was only when MHTCo. made this motion to lift the stay that the Village Gate reacted.

In New York, subordination clauses in mortgages and leases and subordination agreements are valid and enforceable. *In re Kizzac Management Corp.*, 44 B.R. 496, 504 (Bankr.S.D.N.Y.1994), *citing 220 West 42 Assoc. v. The Ronbet Newmark Co.*, 84 Misc.2d 259, 375 N.Y.S.2d 255, *aff'd, as modified*, 53 A.D.2d 829, 385 N.Y.S.2d 304 (1st Dep't), *aff'd*, 40 N.Y.2d 1000, 391 N.Y.S.2d 107, 359 N.E.2d 701 (1976). *See also In re TM Carlton House Partners, Ltd.*, 97 B.R. 819, 823–24 (Bankr. E.D.Pa.1989) (court recognized validity of

subordination clause but denied enforcement of it because debtor/landlord acted contrary to subordination clause rights for four years). Thus, a subordinate lease interest is extinguished upon foreclosure if the tenant is properly made a party to the action. 74 N.Y.Jur.2d, *Mortgage Foreclosure*, § 294 (1988). By virtue of the tenant's leasehold interest in the premises, the tenant is considered a necessary party defendant to foreclosure actions. *Flushing Savings Bank v. CCN Realty Corp.*, 73 A.D.2d 945, 424 N.Y.S.2d 27 (2d Dep't. 1980); *G.B. Seely's Son, Inc. v. Fulton–Edison, Inc.*, 52 A.D.2d 575, 382 N.Y.S.2d 516 (2d Dep't.1976). The courts of this state have recognized that lessees cannot unilaterally alter subordination provisions and that failure to permit a mortgagee to continue its foreclosure action against a lessee, where the value of the premises unencumbered by the lease exceeds the value of the premises encumbered by the lease, would harm the owner of the premises, because they will be worth much less to a prospective purchaser at the foreclosure sale. *G.B. Seely's Son, Inc.*, 382 N.Y.S.2d at 521. The tenant may protect his subordinated interests by exercising his right of redemption (which is derivative of the owner's) and acquiring the mortgage on the leased premises upon the default of the mortgagor. *Id.* 382 N.Y.S.2d at 520 (citing *Averill v. Taylor*, 8 N.Y. 44; *Glennon v. Spencer*, 163 App.Div. 820, 149 N.Y.S. 226 (3d Dep't.1914); *Nelson v. Loder*, 132 N.Y. 288, 30 N.E. 369 (1892)).[2]

■ Bankruptcy does not automatically change this nor does the automatic stay create a nondisturbance agreement once the lease has been assumed. Indeed, subordination provisions are generally enforceable in bankruptcy. *See* 11 U.S.C. § 510(a) and (c). There is merit to the notion that a subordination provision is an economic term of the landlords's bargain and ought not lightly be overridden. The merit lies in the fact that the building free of long-term leases may well be worth more than encumbered by the lease and

will fetch more at foreclosure should the landlord default. Particularly here is that so where the lease (which is for at least half the space in the building) was entered into many years ago, is now greatly below market, and has another 15 years to run, which can only have a depressing effect on the value of the building. Thus I conclude that on the facts presented, the subordination clause ought not be overridden, assuming I have the power to do so.

## C. 362(d) RELIEF IS APPROPRIATE

■ The only question remaining is what to do with the automatic stay. Section 362(d)(1) of the Code permits the court to terminate, annul, modify or condition the stay for cause, including, but not limited to, the lack of adequate protection of an interest in property of such party in interest. Generally, proceedings which involve the postpetition activities of the debtor need not be stayed since they bear no relationship to the purpose of the stay, protection of the debtor and its estate from creditors. L. King, *Collier on Bankruptcy*, ¶ 362.-07[3] at 362–71 (15th ed.1992).

■ There are several factors which lead me to believe that cause exists for modification of the automatic stay. First, the debtor assumed the lease containing the subordination clause. Second, the subordination clause is enforceable. Third, the mortgagee cannot complete its foreclosure of the landlord's building absent relief from the stay. Fourth, the building is not marketable, or is worth little, with the lease in place. Fifth, since the mortgagee is not a creditor of the estate and the debtor has not indicated any intention to acquire the mortgage, the mortgagee's indebtedness will not be dealt with by the debtor in its plan as a surrogate of sorts for allowing the mortgagee to enforce its rights under its mortgage. Sixth, given the enforceability of the subordination clause, unless the debtor were to come to peace with the mortgagee or relocate, I could not confirm any plan since its feasibility would hinge on a lease which could

---

**2.** The state courts focus on whether the mortgagee will be made whole (such as through redemption). Thus, if there were evidence that the value of the premises encumbered by the debtor's lease nonetheless exceeded the mortgagee's debt (which would probably be rare and is not the case here), perhaps the equities would tip in favor of the debtor.

be terminated once the automatic stay expired. Seventh, the debtor has had some 17 months in which to file a plan but has not done so. For all these reasons, I believe that some relief is warranted.

The debtor's management consultant testified that although the debtor had not operated profitably until last month, its operations have improved and should continue to improve. He admitted that the debtor could not fund a plan out of operations at present but indicated that one of the debtor's principals had expressed a willingness to contribute funds. He also testified that the debtor would shortly be able to afford rent in the vicinity of $15,000 per month, albeit by keeping its belt tight. In light of these circumstances, I am loathe to simply lift the stay without giving the debtor an opportunity to salvage its business. Accordingly, I will modify the stay to allow the foreclosure to proceed up to the point of judgment. No enforcement may be had until the earlier of vacation of the premises by the Village Gate or April 30, 1993. That should give the Village Gate ample opportunity to renegotiate the terms of its lease with MHTCo. or move.

SETTLE ORDER consistent with this decision.